Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT B.K.:

**ERIN L. BERGER**
Evansville, Indiana

ATTORNEY FOR APPELLANT D.B.K.:

**THOMAS G. KROCHTA**
Vanderburgh County Public Defender
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana



FILED
Mar 28 2013, 8:52 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF D.K. (Minor Child) and<br><br>B.K. (Mother) and D.B.K. (Father),<br><br>    Appellants-Respondents,<br><br>        vs.<br><br>THE INDIANA DEPARTMENT OF CHILD SERVICES,<br><br>    Appellee-Petitioner. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 82A01-1208-JT-367<br>)<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Brett J. Niemeier, Judge
The Honorable Renée Allen Ferguson, Magistrate
Cause No. 82D01-1203-JT-33

**March 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

B.K. ("Mother") and D.B.K. ("Father") appeal the trial court's involuntary termination

of their parental rights to their child, D.K. Mother also appeals the denial of her motion to

correct error. We affirm.

**Facts and Procedural History**

In its termination order, the trial court made the following findings of fact:[1]

**<u>FINDINGS OF FACTS</u>**

1. D.K. was born on August 29, 2000, and is a child under the age of eighteen (18) years.

2. Mother is the biological mother of D.K.

3. Father is the biological father of D.K.

4. D.K. is a child in need of services in Cause No. 82D01-1011-JC-00757.

5. On November 15, 2012, the Indiana Department of Child Services, Vanderburgh County Office, filed a Petition Alleging a Child in Need of Services and Affidavit of Caseworker Requesting Detention for D.K.[2] D.K. was detained prior to the initial hearing and not returned to her parents.

6. On November 16, 2010, Mother represented by counsel stipulated to the evidence the Court will used [sic] to determine if D.K. was a child in need of services. The Court found that D.K. is a child in need of services.

---

[1] The trial court's order refers to the parties by their full names. We use "Mother," "Father," and "D.K." where appropriate.

[2] The petition alleged: "On or about November 2010, [Mother] stuck [sic] [D.K.] causing injury to [D.K.'s] thighs and collar bone region. [Mother's] version of the facts of how [D.K.] obtained the injuries was not consistent with [D.K.'s] injuries." Father's App. at 13. The petition further alleged that Father, "while not present at the time of the incident, condones [Mother's] actions. [Father] has a history of tolerating inappropriate behavior by [Mother] causing harm to prior born children resulting in involuntary termination of parental rights." *Id*. at 14.

7.    The dispositional hearing was held on February 9, 2011. Neither parent appeared at the hearing. The court issued a dispositional order and ordered the parents to comply with the parental participation plan.

8.    All subsequent statutorily required hearings were held on a timely basis and orders issued as statutorily required.

9.    Mother has had her rights terminated for her other four (4) children in the following Cause Numbers: 87D02-0102-JT-00003; 87D02-0102-JT-00004; 87D02-0102-JT-0005; and 87D02-0603-JT-00007. She did not appear at any of the hearings and was defaulted in all of the termination causes listed above.

10.   Mother admitted that she has been a cocaine addict for years and during her relationship to [sic] Father.

11.   Neither Father nor Mother could not remember [sic] their marriage date or divorce date.

12.   Mother, who is thirty-nine (39) years of age, married Keith Chambers, who is nineteen (19) years of age, August 28, 2010, and moved in with Father and D.K.

13.   Despite divorcing Father, marrying Keith Chambers, moving to Mississippi and currently being in prison, Mother still testified that the home of Father is her residence.

14.   Mother has completed her education to the level of the "11th grade" and not been gainfully employed most of her life.

15.   Mother testified that the extensive use of drugs now affects her memory and ability to mentally function.

16.   Mother has never had a driver's license. She has repeatedly been convicted of driving without ever having a license and is currently in prison serving a sentence as a felony conviction for her repeated convictions of driving without a license as a habitual offender and violating her probation.

17.   Mother cannot remember when she last saw D.K.

18. Mother admitted that she failed to complete any of the services required by the Indiana Department of Child Services to regain custody of D.K.

19. Mother admitted that she tested positive during her substance abuse program at Counseling for Change and missed classes.

20. William Campbell, the Director of Counseling for Change, testified that Mother was at his agency for anger management, couples counseling, and substance abuse treatment. She did not complete her substance abuse program by testing positive for cocaine and failing to attend classes. He further testified that she attended only a few of her counseling classes before she quit.

21. Mother testified that she needed more extensive drug treatment than Counseling for Change or Stepping Stone Inpatient (21 days) offered, but she did nothing to pursue more extensive treatment.

22. Mother testified that when she knew there was a warrant for her arrest on the charge in which she is now currently serving in prison [sic], so she left for Mississippi.

23. Pursuant to the Court's docket in 82C01-1107-FD-806, Mother had been convicted of Operating a Vehicle After Being Adjudged An Habitual Offender. A Petition to Revoke Probation was filed because she had failed to report and had missed drug tests. The revocation was amended to include leaving the jurisdiction of the Court.

24. Father drove Mother to the bus station to leave for Mississippi while Mother was still on probation and knew she was leaving to avoid arrest.

25. Mother testified that she needed to go to prison for drug treatment, because she would not be able to get drugs while in prison. So, she shop lifted clothes and other items at a Walmart in Mississippi, so that she would get arrested and get off drugs.

26. Mother testified that there were drugs in prison, but she was not using any.

27. Mother has missed many hearings in this cause. She was found in contempt for failing to do a drug and alcohol test on July 22, 2011, July 24, 2011, July 28, 2011, July 30, 2011, August 3, 2011, August 7, 2011, and August 8, 2011.

4

28. Mother has an extensive list of convictions including but not limited to false informing, check deception, [and] operating a motor vehicle without ever receiving a driver's license.

29. Mother served a sentence for her shop lifting in Mississippi before returning under extradiction [sic] to Indiana to serve her current time in Madison Correctional.

30. Mother does not want to live in Evansville, Indiana. Her plan after prison is to immediately go back to Mississippi after her release. She stated that it will take her years to sort out her issues.

31. Mother was ordered to do random drugs, substance abuse treatment, counseling, and a parenting class. She tested positive on 11 out of 17 drug screens for cocaine. The only time she was clean is when she had just been released from jail. Mother failed to complete her substance abuse treatment at Counseling for Change. She only attended 4 out of 14 parenting classes.

32. Mother has not seen D.K. since November of 2011.

33. Mother admitted that she cannot care for D.K. at this time or in the foreseeable future.

34. Mother believes that whether or not she has her rights terminated that her children will find her when they turn eighteen years of age, because she is their mother.

35. Mother requested and was granted permission to immediately leave Vanderburgh County to return to the Indiana Department of Correction after she provided her testimony.

36. Father is eighty[-]three (83) years of age.

37. Father had his rights terminated to another child in Cause Number 87D02-0102-JT-00005. Although he actively opposed the termination of his parental rights, he did not know that they had actually been terminated on February 4, 2004. He testified that although he sporadically visited with [the] child, who[m] he picked up from the child's adoptive home, he did not know the child had been adopted[.]

5

38. Father was a life insurance salesman, who retired at sixty[-]two (62) years to become a commercial truck driver. Father worked for several trucking companies. When Father worked for Toyota, he was gone Monday through Friday. Subsequently, he worked at Prospect Trucking, Joe Beard, and Matrix in Henderson, Kentucky. He was fired from Prospect and does not know why.

39. Father testified that he knew that Mother was using drugs at the time he married her and has continued use throughout the time that he has known her.

40. Father testified that he knew that Mother had no driver's license when he gave her the keys to drive his vehicles. He stated that he had to pay to get his vehicles out of impound when she was arrested.

41. Father testified he did not know that Mother and Keith Chambers, who were both living in his home, were married.

42. Father knew that Mother actively used drugs and did not have a driver's license when he left D.K. in her care while he pursued his commercial trucking employment.

43. Father testified that he felt that Mother testified truthfully in this matter and has changed. He in fact believed that she got caught at Walmart, so that she would be imprisoned and thereby get off drugs despite the testimony that illegal drugs were still available in prison.

44. Father testified that Mother is a fit mother although later in the trial he changed his testimony to the fact he thought she was an unfit mother.

45. Father testified that he would keep Mother away from D.K., because the Court and his attorney told him to do so. However, he did not see any issue with her driving without a license despite repeated convictions and having a cocaine addiction, or having her 19[-]year[-]old husband reside in his home.

46. Father testified that the use of cocaine by Mother was not an issue.

47. Father testified that Mother not having a driver's license was not a problem, because she did not have a wreck.

48. The case manager did not have any contact with Mother from December of 2011 until Mother went to prison. She continuously [sic] changed her phone number and would not contact the family case manager.

49. When Father was living with Mother, he failed to go to services if Mother did not go. Although counseling would have benefitted Father, he had no interest in new methods of managing his issues with Mother.

50. Father had 87 scheduled visits with D.K. of which he attended 64. He was late for 14 visits, did not show for 4 visits, and cancelled 5.

51. When Mother and Father had their rights to prior children terminated in Warrick [County], D.K. was placed in a guardianship with the maternal grandmother. When the maternal grandmother died, Father and Mother took D.K. to their home. The incident initiating the current child in need of services action started shortly after the return of D.K. to her parents.

52. Father failed to complete any parenting class prior to the filing of the petition to terminate his parental rights. He missed a third of his parenting classes at Lampion, which included those that would have benefitted him the most.

53. Father forgot the pre-trial hearing for this trial concerning the termination of his parental rights to D.K.

54. Father has a co-dependency issue with Mother. He did not attend counseling if she did not want to go when she was in the home. Since June 5, 2012, he has been sending Mother $500 a month while she is in prison, which is approximately a third of his income.

55. Father has stated to the family case manager that he thought physical abuse was not a serious issue although he did acknowledge that there are other more appropriate ways to punish a child.

Mother's App. at 15-20; Father's App. at 18-23.

On March 13, 2012, the Indiana Department of Child Services ("DCS") filed a petition to terminate Mother's and Father's parental rights to D.K.[3] On July 2 and 3, 2012, the trial court held a hearing on the petition. On August 14, 2012, the trial court issued an order containing the foregoing findings and the following conclusions:

6. Mother has demonstrated by her failure to make any significant effort that she does not have any interest in parenting D.K. Her reasons for why she is serving time are not believable and contrary to the official Court record. She has made no effort to regain the custody of D.K.

7. Father has demonstrated that he is in denial concerning the safety of the child when she is with her mother. His co-dependency towards the mother is demonstrated by his actions towards her and unrealistic view of the mother's testimony. He has not shown responsible behavior concerning the care of D.K. to this point in time.

8. The Court now finds by clear and convincing evidence that the allegations of the petition to terminate parental rights are true in that:

a. D.K. has been removed from the care and custody of her parents for at least the last fifteen (15) months out of the last twenty-two (22) months since the initiation of the wardship.

b. There is a reasonable probability that the conditions that resulted in the removal of D.K. having continued placement outside the care and custody of [sic] will not be remedied in regards to the mother or father.

c. There is [a] reasonable probability that the continuation of the parent-child relationship between Father and his child D.K. poses a threat to the well-being of D.K.

d. There is [a] reasonable probability that the continuation of the parent-child relationship between Mother and her child D.K. poses a threat to the well-being of D.K.

---

[3] The petition alleges that "[t]ermination is not in the best interests of the child at this time." Mother's App. at 13; Father's App. at 16. We presume that "not" is a scrivener's error.

e. Termination of the parent-child relationship between D.K. and Mother and Father is in the child's best interests.

f. The plan of the Department of Child Services for the care and treatment of D.K. upon termination of parental rights is adoption, which is acceptable and satisfactory.

….

**IT IS NOW CONSIDERED, ORDERED, ADJUDGED, AND DECREED** that the parent-child relationship between Mother and Father and their child, D.K., is now and forever terminated. D.K. is free for adoption and will remain in the care and custody of the Indiana Department of Child Services, Vanderburgh County Office, until the adoption is finalized.

Mother's App. at 20-24; Father's App. at 23-27.

At a hearing on that date, Mother's counsel asked the court "to consider reopening the record, reopening the trial, and allowing [Mother] to present evidence of a change in circumstances, given that she is no longer incarcerated and could now actually provide for [D.K.]." Mother's Tr. at 200-01. Counsel for DCS objected, stating that "regardless of being in or out of jail, wasn't the point of the termination, but [Mother's] failure to care for the child and provide for the child's safety when she was available to do so." *Id*. at 201. The trial court denied Mother's request, stating, "[A]ctually, Mother being incarcerated did not factor into the Court's decision to terminate parental rights. But as stated in the finding, it was basically Mother's conduct throughout the years leading up to the trial, versus her parental rights just being terminated because she was incarcerated." *Id*.

On August 27, 2012, pursuant to Indiana Trial Rule 59, Mother filed a motion to correct error asking the court to rescind its order and reopen the evidence based on the allegedly "newly discovered material evidence that she was no longer incarcerated and was,

9

therefore, sufficiently able to care for" D.K. Mother's App. at 25.[4] DCS filed an objection,

and the trial court denied the motion on September 11, 2012. Mother and Father now appeal.

 Additional facts will be provided as necessary.

**Discussion and Decision**

*I. Denial of Mother's Motion to Correct Error*

Mother first challenges the denial of her motion to correct error. A party seeking

relief based on newly discovered evidence is entitled to relief only when she demonstrates

that

> (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

*Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1271 (Ind. 2008) (quoting

*Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000)).

Our standard of review is well settled:

> A trial court has broad discretion in ruling on a motion to correct error. We will reverse only for an abuse of that discretion. An abuse of discretion occurs if the decision was against the logic and effect of the facts and circumstances before the court or if the court misapplied the law.

*Brown v. Brown*, 979 N.E.2d 684, 685 (Ind. Ct. App. 2012) (citations omitted).

---

[4] Trial Rule 59(A) provides that a motion to correct error is not a prerequisite for appeal, except when a party seeks to address newly discovered material evidence capable of production within thirty days of final judgment "which, with reasonable diligence, could not have been discovered and produced at trial." Trial Rule 59(J) provides that if the court determines that prejudicial or harmful error has been committed, it "shall take such action as will cure the error, including" granting a new trial, altering, amending, modifying, or correcting the judgment, or granting any other appropriate relief.

10

Mother is not entitled to relief because the evidence was not newly discovered. At the termination hearing, Mother testified that she would finish serving her sentence on August 2, 2012. Mother's Tr. at 18.[5] Moreover, the evidence was neither material nor relevant and would not have produced a different result at retrial because, as the trial court specifically stated, Mother's incarceration "did not factor into [its] decision to terminate parental rights." Mother's App. at 201. Consequently, we find no abuse of discretion here.

## *II. Termination of Mother's and Father's Parental Rights*

"The involuntary termination of parental rights is the most extreme measure that a court can impose and is only designated as a last resort when all other reasonable efforts have failed." *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). "The purpose of terminating parental rights is not to punish parents but to protect their children. Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents." *Id.* (citation omitted).

Indiana Code Section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:

(2) The petition must allege:

(A) that one (1) of the following is true:

….

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with

---

[5] According to the motion to correct error, Mother was actually released on August 1.

the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove "each and every element" by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009); Ind. Code § 31-37-14-2. "Clear and convincing evidence need not show that the custody by the parent is wholly inadequate for the child's survival. Instead, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development would be threatened by the parent's custody." *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010) (citation omitted). If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re I.A.*, 903 N.E.2d 146, 152-53 (Ind. Ct. App. 2009).

Thus, when reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. We will consider only the evidence and reasonable inferences therefrom that are most favorable to

12

the judgment. When reviewing findings of fact and conclusions thereon in a case involving termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings. Then, we determine whether the findings support the judgment. The trial court's judgment will be set aside only if it is clearly erroneous.

*Id.* at 153 (citations omitted). Clear error is that which "leaves us with a definite and firm conviction that a mistake has been made." *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

### A. Mother

Mother makes the following contentions:

> In this case, DCS failed to prove by clear and convincing evidence that (i) the conditions that resulted in the child's removal would not be remedied[;] (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child; and (iii) termination is in the best interest of the child. *See* I.C. 31-35-2-4(b)(2)(B).[6] Additionally, DCS failed to make reasonable efforts to provide family services or to preserve and reunify D.K.'s family.

Mother's Br. at 8. Mother makes no further argument and cites no authority regarding DCS's alleged failure of proof as to any of the statutory elements. Consequently, any claims of error are waived. *See Pasha v. State*, 524 N.E.2d 310, 314 (Ind. 1988) ("Bald assertions of error unsupported by either cogent argument or citation to authority result in waiver of any error on review.").

As for DCS's alleged failure to make reasonable efforts to provide services or to preserve and reunify the family, we note that such efforts are required in most child-in-need-of-services ("CHINS") proceedings but not in termination proceedings; thus, a failure to

---

[6] Pursuant to the statute, DCS was required to prove either (i) or (ii), but not both.

make such efforts "does not serve as a basis on which to directly attack a termination order as contrary to law." *In re H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009).[7] In sum, Mother has failed to establish that the trial court's termination order is clearly erroneous as to her.

## B. Father

Father challenges several of the trial court's findings and conclusions and asserts that DCS failed to prove by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in D.K.'s removal will not be remedied and that continuation of the parent-child relationship poses a threat to D.K.'s well-being. Pursuant to Indiana Code Section 31-35-2-4(b)(2)(B), DCS was required to prove only one or the other, not both. Moreover, Father's argument is essentially an invitation to reweigh evidence, draw inferences, and judge witness credibility in his favor, which we may not do.

"In judging a parent's fitness, the trial court should examine the parent's fitness at the time of the termination hearing, as well as the parent's habitual patterns of conduct, to determine whether there is a substantial probability of future neglect or deprivation of the child." *J.M.*, 802 N.E.2d at 44-45. "Additionally, the court may consider any services offered by the DCS to the parent and the parent's response to those services." *In re D.K.*, 968 N.E.2d 792, 798 (Ind. Ct. App. 2012). Father's parental rights were terminated as to D.K.'s older sibling, and it took him years to realize that fact. The trial court heard plenty of evidence supporting its determination that Father was in denial of (if not downright oblivious

---

[7] In fact, the trial court in this case made a finding in the CHINS proceeding that DCS was *not* required to make reasonable efforts to reunify D.K. with Mother and Father because their parental rights had been involuntarily terminated with respect to one of D.K.'s biological siblings. Ind. Code § 31-34-21-5.6(b)(4).

to) Mother's numerous personal issues that threatened D.K.'s well-being, including her cocaine addiction, erratic behavior, and criminal activity. Father was equivocal at best regarding how much contact he would allow D.K. to have with Mother, who is now out of prison and apparently wants to be involved in her daughter's life. The trial court also heard plenty of evidence supporting its determination Father is codependent on Mother and has not been responsible in caring for D.K. Father exhibited no interest in resolving his codependency issues and failed to complete a parenting class, neither of which would bode well for D.K.'s well-being. "The trial court need not wait until a child is irreversibly harmed before terminating the parent-child relationship." *I.A.*, 903 N.E.2d at 155. Father has failed to establish that the trial court clearly erred in doing so here.

Affirmed.

ROBB, C.J., and FRIEDLANDER, J., concur.