In the Matter of the Involuntary Termination of Parent–Child Relationship of J.M. Minor child and his Mother, Dorothy McKnight and his alleged Father, Daniel Gibson, Appellant–Respondent,

v.

**MARION COUNTY OFFICE OF FAMILY AND CHILDREN,**
Appellee–Petitioner,

and

**Child Advocates, Inc., Co–Appellee**
(Guardian ad Litem).

No. 49A04–0307–JV–339.

Court of Appeals of Indiana.

Jan. 20, 2004.

Transfer Denied April 14, 2004.

Elizabeth Gamboa, Franklin, IN, Attorney for Appellant.

DeDe K. Connor, Office of Family and Children, Indianapolis, IN, Attorney for Appellant.

## OPINION

BAKER, Judge.

Appellant-respondent Dorothy McKnight appeals the trial court's decision terminating McKnight's parental rights as to her then two-year-old minor son, J.M. Specifically, McKnight contends that the trial court erred in denying a joint motion for a continuance of the final hearing that she filed along with appellees, the Marion County Office of Family (OFC) and Child Advocates, Inc. (Child Advocates), the guardian ad litem. Concluding that the trial court's denial of the motion did not amount to an abuse of discretion in these circumstances, we affirm.

## FACTS

The facts most favorable to the judgment are that the OFC became involved in this matter after it was discovered that McKnight's ten-year-old daughter, C.T., had been molested at the family residence by J.C., one of her older brothers. As a result of this incident, the OFC filed a petition alleging that three of McKnight's children, C.T., born on May 25, 1993, I.M., born on April 15, 1998 and J.M, born on November 2, 2000, were children in need of services (CHINS). At that time, all three children were in the Marion County Children's Guardian Home. The petition asserted that while McKnight was aware of J.C.'s actions, she did nothing to prevent any further molestations of C.T. or to protect the younger children. Moreover, the OFC alleged that McKnight had mental health problems and that her house was in an inappropriate condition for the children because it was cluttered with clothes and garbage. It was also revealed that the OFC had been involved with McKnight on five previous occasions, three of which involved substantiated cases of abuse. As a result of these allegations, the juvenile court ordered McKnight to complete certain services including drug and alcohol assessment and counseling sessions so that reunification might eventually become possible.

On May 21, 2002, the OFC filed a petition for the involuntary termination of McKnight's parental rights as to all three of the children, and the trial court ultimately set the cause for trial on April 21, 2003. The OFC alleged that McKnight had not successfully completed the services that had been ordered. While this case was pending, McKnight gave birth to a fourth child, S.M., and the OFC subsequently filed a petition alleging that this child was a CHINS.

Thereafter, the OFC, Child Advocates as the guardian ad litem and McKnight filed a joint motion for continuance of the trial on April 17, 2003, requesting additional time in which to evaluate McKnight's progress. However, the OFC asserted that it was "not changing the permanency plan to reunification." Appellant's App. p. 121. The motion requested a ninety-day continuance because McKnight was allegedly participating in services towards reunification with the children, had new housing, had secured stable employment, was attending counseling sessions and had maintained consistent visitation patterns. While the trial court denied the motion that same day, the parties renewed their requests for a continuance on the day of trial.

Before the trial was to begin, the court conducted an "attorneys only" conference, and again denied the motion to continue the final hearing. In its ruling, the trial court observed that it was a "primary concern" to achieve "permanency for children quickly." Tr. p. 57. Inasmuch as the trial court determined that another continuance would not achieve that goal, the request was denied.

The matter then proceeded to trial,[1] and it was demonstrated that while McKnight had obtained employment at Wal–Mart, she had been on a personal leave of absence for nearly one month to resolve a claim with the company. McKnight also had not received a paycheck from that job in "about three weeks." Tr. p. 66–67. McKnight acknowledged, however, that she was receiving some income from "cleaning houses on the side." Tr. p. 66–67. The OFC also established that McKnight had cancelled visitations with J.M. three times in the seven weeks before the trial for various reasons. The assessor of the parenting program that McKnight attended expressed concerns about McKnight's inability to accept responsibility for her involvement with the OFC and with the relationships regarding her children.

Although the evidence established that McKnight attended parenting classes, she failed to do her "homework" for the instructor and did not show any improvement in her parenting skills after completing the classes. Moreover, even though McKnight completed the classes, the OFC had removed her newborn child from her care. The evidence also showed that McKnight lost her residence after she had completed a Home Based Counseling Program.

Child Advocates, who had joined in the motion for continuance, agreed that the OFC's plan of termination and adoption was in J.M.'s best interest and that J.M. should not be reunified with McKnight at that time. Additionally, the representative from Child Advocates supported the plan of continued monitoring of McKnight's progress because termination of parental rights might be premature. She was of the opinion that if McKnight demonstrated that she was an appropriate placement, she could eventually be reunited with J.M. Two case managers, who had worked closely with McKnight, recommended that her parental rights should be terminated. They were not aware, however, that a motion for continuance had been filed.

Following the presentation of evidence, the trial court took the OFC's petition to terminate McKnight's parental rights under advisement until May 19, 2003. On that day, an order was issued terminating McKnight's parental rights as to J.M. The trial court found, among other things, that there was a reasonable probability that the conditions that resulted in the removal of J.M. would not be remedied, that the continuation of the parent-child relationship posed a threat to J.M.'s well-being, and that termination was in J.M.'s best interests. McKnight now appeals.

### DISCUSSION AND DECISION

In addressing McKnight's contention that the trial court erred in denying the joint motion to continue the termination hearing and therefore improperly terminated her parental rights, we note that the ruling on a non-statutory motion for a continuance is within the sound discretion of the trial court. *Troutman v. State*, 730 N.E.2d 149, 151 (Ind.2000). Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each circumstance. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993). A decision on a motion for continuance will be reversed only upon a showing of an abuse of discretion and prejudice resulting from such an abuse. *Troutman*, 730 N.E.2d at 151.

1. The matter proceeded with respect to J.M. only, as the temporary custody of C.M. and I.T. was awarded to their father. Tr. p. 48.

Our supreme court has observed that an abuse of discretion consists of an "evaluation of facts in relation to legal formulae. In the final analysis, the reviewing court is concerned with the reasonableness of the action in light of the record." *Tapia v. State*, 753 N.E.2d 581, 585 (Ind.2001). Thus, the *Tapia* court observed that the trial court's ruling should be set aside only if it is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn therefrom. *Id.* Finally, while the facts and reasonable inferences in certain instances might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *McBride v. McBride*, 427 N.E.2d 1148, 1151 (Ind.Ct.App.1981).

■ Turning to the merits of McKnight's argument, the record shows that J.M. had been placed outside of her custody for nearly twenty-three months at the time of the termination hearing in April 2003. Tr. p. 61, 109. Thus, McKnight had been granted nearly two years to complete the services and programs that the trial court had ordered her to attend.

It is apparent that the trial court was in a position where it could only speculate about the benefits that the parties might have gained had the motion for continuance been granted. To be sure, there was no showing that the grant of additional time, in and of itself, would likely aid McKnight in her efforts to reunify with J.M. when she had already been afforded a significant period to complete the requirements. McKnight fails to explain what evidence she might have proffered or a strategy that she could have employed had she been afforded additional time. Had the motion for a continuance been granted, the plan of the OFC was to simply allow additional time to monitor McKnight's

progress—not to change the plan to reunification. Appellant's App. p. 121.

The OFC, at some point, argued "both sides" with regard to the motion for continuance. To be sure, the OFC joined in the motion for continuance at the trial court level but, on appeal, it asserts that the trial court did not abuse its discretion in denying the same. We do not condone such a posture and, had the OFC articulated its reasons for joining in the motion, our decision today may very well have been different. However, we simply will not second-guess the trial court's decision in these circumstances.

We also note that McKnight has failed to show that she was prejudiced by the trial court's refusal to grant the motion for continuance. To support a petition to terminate parental rights, the OFC must show, among other things, that there is a reasonable probability:

>  (i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

>  (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child[.]

Ind.Code § 31–35–2–4(b)(2)(B).

■ The OFC must also establish by clear and convincing evidence that termination is in the best interests of the child. I.C. § 31–35–2–4(b)(2)(C); *J.K.C. and S.R.C. v. Fountain County Dep't of Pub. Welfare*, 470 N.E.2d 88, 91 (Ind.Ct.App. 1984). On appeal, we will reverse a termination of parental rights only upon a showing of clear error that leaves us with a definite and firm conviction that a mistake has been made. *In re A.N.J.*, 690 N.E.2d 716, 722 (Ind.Ct.App.1997).

■ In judging a parent's fitness, the trial court should examine the parent's fitness at the time of the termination hear-

ing, as well as the parent's habitual patterns of conduct, to determine whether there is a substantial probability of future neglect or deprivation of the child. *In re D.G.*, 702 N.E.2d 777, 779 (Ind.Ct.App. 1998). A court may properly consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* Moreover, a trial court "can reasonably consider the services offered by the [OFC] to the parent and the parent's response to those services." *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind.Ct.App.1997); *see also In re D.B.*, 561 N.E.2d 844, 848 (Ind.Ct.App.1990) (looking at pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services), questioned on other grounds by *S.E.S. v. Grant County Dep't of Welfare*, 594 N.E.2d 447, 448 (Ind.1992). We must be ever mindful that parental rights, while constitutionally protected, are not absolute and must be subordinated to the best interests of the child when evaluating the circumstances surrounding termination. *A.A.C.*, 682 N.E.2d at 544. Indeed, a trial court need not wait until a child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

As established by the evidence presented at trial, McKnight's failures were not premised upon her tardiness in completing services. Rather, McKnight's failures centered around her inability to accept responsibility for her situation, coupled with her inability to benefit from services that she had previously completed. As demonstrated by the evidence presented at trial, it is entirely reasonable to conclude that McKnight did not suffer adverse consequences merely because the motion for continuance was denied. Additionally, it is apparent that the trial court was approv-

ing a plan of action for the OFC to pursue in an effort to further the best interests of J.M. That plan included proceeding with the termination trial instead of allowing the permanency of J.M. to be further delayed. We thus cannot say that the trial court's decision to deny the joint motion for continuance was clearly against the logic and effect of the facts and circumstances before the court.

The judgment of the trial court is affirmed.

NAJAM, J., and MAY, J., concur.