Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 12 2013, 6:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERIN L. BERGER**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**DANIEL JANKOWSKI**
DCS, Vanderburgh County
Evansville, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE TERMINATION OF THE )
PARENT-CHILD RELATIONSHIP OF )
H.W. (Minor Child) and )
                                                 )
D.F. (Father), )
                                                 )
    Appellant-Respondent, )
                                                 )
          vs. )    No. 82A05-1301-JT-45
                                                 )
THE INDIANA DEPARTMENT OF CHILD )
SERVICES, )
                                                 )
    Appellee-Petitioner. )

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Renee A. Ferguson, Magistrate
Cause No. 82D01-1208-JT-85

September 12, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

D.F. ("Father") appeals the trial court's involuntary termination of his parental rights to his child, H.W. We affirm.

**Facts and Procedural History**

In its termination order, dated November 11, 2013, the trial court made the following findings of fact:[1]

1. H.W. (the "Child") is a child under the age of 18 years, having been born on August 19, 2011.

2. Father is an alleged biological Father of H.W.

3. Mother is the mother of H.W.

4. K.W. is H.W.'s older sister and is three (3) years old[er] having been born in 2008.[2]

5. On February 16, 2011, DCS made contact with the family regarding allegations that the Child's mother had not been properly feeding the Child's sibling K.W. and that the [sic] K.W. was hospitalized as a result. On February 22, 2011, DCS filed a Petition Alleging that K.W. was a Child in Need of Services ("CHINS") due to the mother's alleged medical neglect and K.W. was placed in foster care by the court at that time. On March 2, 2011, K.W. was found to be a CHINS.

6. Father was taken into custody by law enforcement officials on or about March 2, 2011.

7. On June 10, 2011, Father was re-indicted in Fulton County, Georgia on felony charges of criminal attempt to commit murder, as well as six (6)

---

[1] The trial court's order often refers to the parties by their full names. We use "Father," "Mother," "H.W.," and "K.W." where appropriate. Similarly, we use "DCS" to indicate the Department of Child Services.

[2] Father's parental rights to K.W. were previously terminated, and another panel of this Court affirmed that termination on appeal. *In re K.W.*, No. 82A04-1210-JT-523 (Ind. Ct. App. June 26, 2013).

counts of cruelty to children in the first degree, three (3) counts of aggravated battery, and six (6) counts of aggravated assault.

8. The re-indictment was in relation to injuries K.W. was alleged to have received on October 29, 2010 in Fulton County Georgia, prior to DCS's involvement with the family. In connection to the charges, the re-indictment alleges that K.W. suffered numerous injuries, including: extensive and severe injury to the brain, liver, neck and bowel; extensive and severe bruising to the body; severe and irreversible brain damage; lacerations to the liver; and damage to the bowels.

9. It was also alleged that Father seriously disfigured K.W.'s back, breast, buttocks, and inner thigh/vaginal area by biting K.W. with his teeth.

10. After a trial by jury in the Superior Court of Fulton County, State of Georgia (the "Georgia Court") Father was found guilty on fifteen (15) of the Sixteen (16) criminal counts, including attempted murder of K.W. On or about June 28, 2011, the Georgia Court sentenced Father to serve twenty (20) years in prison on the attempted murder offense. In addition, the Georgia Court sentenced Father to serve ten (10) years in prison on the cruelty to children offenses, which sentence is to run consecutive to Father's attempted murder sentence. The Georgia Court also sentenced Father to serve ten (10) years on the aggravated assault offenses, which sentence was to run consecutive to both the sentence on the attempted murder and cruelty to children sentences. In all, Father is currently serving a forty (40) year sentence in Georgia State Prison.

11. While the Georgia court does allow Father to serve the last five (5) years of his sentence on probation, the Georgia Court ruled that as a condition of his probation that Father must stay away from K.W. and can have no contact with children under the age of ten (10) years.

12. On August 21, 2011, shortly after being born, the Child was removed from the Mother's care as the mother was facing charges in relation to her neglect of K.W. and had not received any rehabilitative services due to her incarceration.

13. The Child was found to be a CHINS on August 23, 2011 and a dispositional hearing was held regarding the Child on September 13, 2011. Since the time the Child was removed from the mother on

3

August 21, 2011, the Child has not been placed back in the custody of either parent and has remained in foster care placement.

14. Father has remained incarcerated since his initial arrest on March 2, 2011. DCS has been unable to provide Father services during the course of the CHINS case due to Father's incarceration in another state.

15. Father has never had any contact with the Child.

16. Father indicated that he does not have a parole hearing until April of 2018.

17. Father has a history of violence prior to his convictions in Georgia. On October 26, 2007, while still a minor Father was found to have committed the delinquent act of battery for hitting his cousin in Vanderburgh County, Indiana.

18. Father reports that he had taken prescription medication all his life to address his problems with anger. However, Father decided to quit taking his medication in 2009 because he felt that he no longer needed the medication.

19. Father also reports that he has unresolved issues with marijuana addiction for which he needs substance abuse treatment. Although, Father has not yet received treatment for his substance abuse issues.

20. DCS filed its petition to terminate the parental rights of both the mother and Father on August 13, 2012. The mother voluntary [sic] terminated her parental rights to the Child on August 23, 2012. Father's termination trial was held on October 24, 2012 and Father was present by telephone during the trial.

21. Father is an extremely violent individual and was found by a jury of his peers to have inflicted serious injuries on the Child's sister K.W. and to have attempted to murder K.W.

22. Moreover, it is impossible for Father to parent the Child from state prison in Georgia.

23. Father asks for more time and to have the Child wait until he is released. However, Father should not be given more time. The Child is in need of permanency now. The Child is more than a year old and

4

sadly has been placed in foster care for her entire young life. It is not in the Child's best interest to make the Child continue to wait for a permanent, stable home, until Father is released form [sic] incarceration.

24. The Court Appointed Special Advocate recommends that Father's rights be terminated.

25. The Child has done very well while in foster care.

26. For these reasons, and based on Father's history as outlined throughout the findings above, termination of Father's parental rights is the permanency plan which is in the best interests of the Child.

27. The plan of care for the Child if parental rights are terminated is adoption. The Child has thrived in her current foster placement. The foster parents want to adopt the Child in the event that parental rights are terminated and have already taken steps toward adopting the Child. If for some reason this family would be unable to adopt after termination of parental rights, another adoptive placement would be able to be located. Adoption would provide the Child with the safety and stability. The plan of adoption is a satisfactory plan to achieve permanency for this Child.

Appellant's App. at 10-13.

Based upon these findings of fact, the trial court concluded that: (1) H.W. has been removed from Father's care for at least six months under a dispositional decree; (2) there is a reasonable probability that the conditions that resulted in the removal of H.W. and her continued placement outside the care and custody of Father will not be remedied; (3) there is a reasonable probability that the continuation of the parent-child relationship between Father and H.W. poses a threat to the well-being of H.W.; (4) termination of the parent-child relationship between Father and H.W. is in the best interests of H.W.; and, (5) DCS has a satisfactory plan for the care and treatment of H.W., and such plan is adoption. Accordingly,

5

the trial court determined that DCS had proven the allegations of the petition to terminate parental rights by clear and convincing evidence and therefore terminated Father's parental rights. Father now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

"The purpose of terminating parental rights is not to punish parents but to protect their children. Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents." *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004) (citation omitted). Indeed, parental interests "must be subordinated to the child's interests" in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009).

Indiana Code Section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:

(2) The petition must allege:

(A) that one (1) of the following is true:

> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

6

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove "each and every element" by clear and convincing evidence. *G.Y.*, 904 N.E.2d at 1261; Ind. Code § 31-37-14-2. If the court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id.* We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which "leaves us with a

7

definite and firm conviction that a mistake has been made." *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied.*

## *I. Reunification Services*

We begin by briefly addressing Father's assertion that DCS failed to "make reasonable efforts to provide family services or to preserve and reunify the family" during his incarceration. Appellant's Br. at 6. Other than this bald assertion, Father fails to develop or make a cogent argument on this issue and therefore has waived our review. *See* Ind. Appellate Rule 46(A)(8)(a) (issues must be supported by cogent reasoning and each contention must be supported by citation to authority or to the record). Moreover, while an argument regarding reunification services may have been appropriately raised in the CHINS proceeding, this argument is not appropriate in termination proceedings. Although DCS is generally required to make reasonable efforts to preserve and reunify families during CHINS proceedings, *see* Ind. Code § 31-34-21-5.5, DCS is not required to provide reunification services during termination proceedings, and failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law. *In re H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009). Accordingly, we will not address the merits of this issue.[3]

---

[3] Even had Father raised this issue during the CHINS proceeding, we note that, pursuant to Indiana Code Section 31-34-21-5.6(b)(2), reasonable efforts to reunify a child with her parent is not required if the parent has been convicted of attempted murder of a child. Father has been convicted of the attempted murder of K.W., H.W.'s biological sister. Thus, reasonable efforts to reunify H.W. with Father were not required.

8

## II. Conditions Will Not be Remedied

We next address Father's challenge to the sufficiency of the evidence supporting the trial court's conclusions that: (1) there is a reasonable probability that the conditions that resulted in H.W.'s removal and continued placement outside his care and custody will not be remedied; and (2) there is a reasonable probability that continuation of the parent-child relationship between him and H.W. poses a threat to H.W.'s well-being. We observe that Indiana Code Section 32-35-2-4(b)(2)(B) requires a trial court to find that only one of the elements of subsection (b)(2)(B) has been established by clear and convincing evidence before properly terminating parental rights. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied* (2000), *cert. denied* (2002). Therefore, finding it to be dispositive, we limit our review to Father's challenge to whether DCS presented clear and convincing evidence establishing that there is a reasonable probability that the conditions that resulted in H.W.'s continued placement outside of Father's care and custody will not be remedied. This Court has said,

> When deciding whether there is a reasonable probability that the conditions leading to a child's removal will not be remedied, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of change conditions. Additionally, a court may consider not only the basis for a child's initial removal from the parent's care, but also any reasons for a child's continued placement away from the parent. The court may also consider the parent's habitual patterns of conduct, as well as evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. Additionally, the court may consider any services offered by the DCS to the parent and the parent's response to those services. Finally, we must be ever mindful that parental rights, while constitutionally protected, are not absolute and must be

9

subordinated to the best interests of the child when evaluating the circumstances surrounding termination.

*In re D.K.*, 968 N.E.2d 792, 798 (Ind. Ct. App. 2012) (citations and quotation marks omitted).

Here, Father has been incarcerated for the entirety of H.W.'s life due to the heinous acts of violence he perpetrated against H.W.'s older sister. Following H.W.'s removal from Mother's home two days after her birth, she has spent her young life in foster care and has never had any contact with Father. In a case like this, where the child has never resided with the parent, we focus on the conditions that led to DCS's retention of custody when considering whether there is a reasonable probability that those conditions will be remedied. *In re W.B.*, 772 N.E.2d 522, 530 (Ind. Ct. App. 2002). DCS retained custody of H.W. due to Father's incarceration, which has prevented him from participating in her life. Indeed, Father concedes that he has been incarcerated since the beginning of the CHINS proceeding and will likely remain incarcerated until H.W. reaches adulthood. The record before us is replete with evidence of Father's habitual patterns of violence which, coupled with his lengthy incarceration, supports the trial court's conclusion that there is a reasonable probability that there will be no change to the conditions that resulted in H.W.'s continued placement outside Father's custody and care. Father does not challenge any of the evidence supporting the trial court's conclusion and, in fact, he cites us to no evidence to the contrary. Father has not shown that the trial court's conclusion is clearly erroneous.

### *III. Best Interests*

Father also argues that there is insufficient evidence to support the trial court's conclusion that termination of the parent-child relationship is in H.W.'s best interests. In determining what is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1253 (Ind. Ct. App. 2002), *trans. denied*. In doing so, the trial court must subordinate the interests of the parent to those of the child involved. *Id.* On appeal, Father makes no specific claim regarding H.W.'s best interests but asserts only that termination of his parental rights is unnecessary because he will consent to H.W. being placed with her paternal grandmother. The trial court heard brief testimony in this regard, and Father's current argument is merely an invitation for us to reweigh the evidence, which we cannot do. *See D.B.*, 942 N.E.2d at 871. DCS family case manager Sarah Reis testified that H.W. is thriving in foster care, that the foster parents are seeking adoption of H.W., and that termination of Father's parental rights is in the best interests of H.W. Father's pattern of violence directed toward children, his continued incarceration, and H.W.'s need for permanency and stability all support the trial court's conclusion that H.W.'s best interests will be served by the termination of Father's parental rights. Based upon the totality of the evidence, we are not left with a definite and firm conviction that a mistake has been made. We therefore affirm the trial court's judgment.

Affirmed.

BARNES, J., and PYLE, J., concur.