Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**CRAIG W. GRAHAM**
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINA D. PACE**
Deputy Attorney Generals
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE
TERMINATION OF THE PARENT-
CHILD RELATIONSHIP OF:

T.E. (MINOR CHILD)
AND
T.E. (FATHER)

    Appellant-Respondent,

       vs.

THE INDIANA DEPARTMENT OF
CHILD SERVICES,

    Appellee-Petitioner.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

Sep 11 2014, 8:39 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

No. 10A01-1401-JT-41

APPEAL FROM THE CLARK COUNTY CIRCUIT COURT
The Honorable Vicki L. Carmichael, Judge
Cause No. 10C04-1308-JT-17

**September 11, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

T.E.'s parental rights to his sixteenth child were terminated in Clark Circuit Court. T.E. appeals the order terminating his parental rights and argues only that the trial court abused its discretion when it denied his motion to continue the termination hearing.

We affirm.

**Facts and Procedural History**

Thirty-four-year-old T.E. has fathered sixteen children with sixteen different women. Tr. p. 134. On May 25, 2012, the Indiana Department of Child Services ("DCS") received a report of neglect for T.E.'s sixteenth child, nine-month-old Ta.E. (hereinafter "the child"). DCS alleged that the child's Mother, L.K., gave the child medication to sleep so that L.K. could go to a bar. The child's head was flattened from lying on her back in the crib an inordinate amount of time, and she did not exhibit appropriate motor skills. L.K. and the child were living in a hotel room, and T.E. was homeless.

On May 29, 2012, the child was removed from T.E.'s and L.K.'s care and three months later she was adjudicated a CHINS. Both parents admitted that the child was a CHINS.[1] After T.E. failed to complete the court-ordered services and missed numerous supervised visits with the child, the DCS filed a petition to terminate T.E.'s parental rights. At the termination hearing, Dr. David Winsch, who performed a psychological evaluation on T.E., testified that he did not believe that T.E. would be capable of appropriately caring for any child. Tr. p. 39. The DCS's family case manager and the

---

[1] L.K. later consented to the child's adoption and does not participate in this appeal.

guardian ad litem also testified that termination of T.E.'s parental rights was in the child's best interests. Tr. pp. 81. 176.

T.E. testified that he has not paid child support or independently cared for any of his sixteen children. T.E. lacks stable housing and stable employment. T.E. does not want his parental rights terminated because he wants to change his life for the better. T.E.'s fiancée testified on his behalf and stated that T.E. assists her in caring for her two children, one of which is T.E.'s biological child. Tr. p. 184.

T.E. wanted his mother to testify at the termination hearing, but she was unavailable due to a medical issue; therefore, the court continued the October 18, 2013 hearing to November 15, 2013, to allow T.E. to present her testimony. However, neither T.E. nor his mother appeared at the November 15, 2013 hearing. T.E.'s counsel requested a continuance, which was denied.

On November 21, 2013, the trial court issued its decree terminating T.E.'s parental rights to the child. The court concluded that:

> b. There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for the placement outside the parent's home will not be remedied in that the Respondent Father has 16 children by several different mothers of whom he has not provided any substantial care, and had provided virtually no support; the father is receiving disability payments due to his learning problems; the father has been hospitalized several times for psychological problems; the father has had several different contacts with law enforcement regarding behavioral issues, as well as drug and alcohol use; and the father has been given several opportunities to have supervised visits with the child, but has missed a substantial number without a valid reason, exhibiting minimal sporadic interest in the child.
> c. Termination is in the best interest of the child herein in that Dr. Winsch testified that his conclusions are that the father is seen as being at increased risk for dysfunctional parenting based upon very inappropriate

3

expectations for children. He also concluded that given the father's longstanding history of disability, inability to appropriately manage his own funds, and serious mental health problems, it does not appear that he will become capable of appropriately caring for a child. The Guardian Ad Litem concurred with Dr. Winsch that the best interest of the children would be served by terminating the parent-child relationship because he was not capable or prepared to care for the child.

Appellant's App. p. 12. T.E. now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his children. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." Id. However, while parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet her responsibility as a parent. In re S.P.H., 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Therefore, parental rights are not absolute and must be subordinated to the child's interest in determining the appropriate disposition of a petition to terminate the parent-child relationship. In re D.K., 968 N.E.2d 792, 798 (Ind. Ct. App. 2012).

T.E. does not challenge the trial court's conclusion that the DCS satisfied the statutory requirements enumerated in Indiana Code section 31-35-2-4 and presented sufficient evidence to terminate his parental rights. His sole argument on appeal is that the trial court abused its discretion when it denied his motion to continue the termination

4

hearing. Specifically, T.E. argues that his due process rights were violated because he was denied the opportunity to present his mother's testimony that T.E. is a good parent.

A trial court's ruling on a motion for continuance in a termination of parental rights case is reviewed for an abuse of discretion. See J.M. v. Marion Cnty. Office of Family & Children, 802 N.E.2d 40, 43 (Ind. Ct. App. 2004), trans. denied. "An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion, but no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial." In re K.W., 12 N.E.3d 241, 244 (Ind. 2014) (citation omitted).

Due process in parental-rights cases involves the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing government interest supporting the use of the challenged procedure. In re C.G., 954 N.E.2d 910, 917 (Ind. 2011) (citing A.P. v. Porter Cnty. Office of Family & Children, 734 N.E.2d 1107, 1112 (Ind. Ct. App. 2000), trans. denied). Both the parent's and the countervailing State's interests that are affected by a termination proceeding are substantial. In re C.C., 788 N.E.2d 847, 852 (Ind. Ct. App. 2007), trans. denied.

The right to raise one's child is an essential, basic right that is more precious than property rights, and a parent has a commanding interest in the accuracy and justice of a termination decision. Id. However, the State's interest in protecting the welfare of a child also is significant. Id. Delays in the adjudication of a termination proceeding impose significant costs upon the functions of government as well as an intangible cost to

5

the life of the child involved.  Id.  Although continuances may be necessary to ensure the protection of a parent's due process rights, "courts must also be cognizant of the strain these delays place upon a child."  Id. at 853.

At the October 18, 2013 termination hearing, T.E. requested an additional hearing date so that his mother, who was unavailable for medical reasons, could appear and testify.[2]  The trial court granted T.E.'s request and set an additional hearing for November 15, 2013.  Neither T.E. nor his mother appeared for the November 15 hearing.  T.E.'s counsel requested an  additional continuance because T.E. was with his mother at her rehabilitation center.  Tr. pp. 201-02.  Counsel stated that T.E.'s mother "would have or could have direct knowledge of watching interaction between [T.E. and the child] and I think this would go to the issue of parental skills."  Tr. p. 202.  But counsel had not spoken to T.E.'s mother about her possible testimony.

The record lacks any evidence, by affidavit or otherwise,[3] as to the content of T.E.'s mother's proposed testimony.  There is also no evidence in the record that would establish that T.E.'s mother ever observed him caring for the child.  T.E. himself admitted that he has never had the child in his exclusive care.  Tr. p. 110.  We also observe that T.E. had the opportunity to present evidence and cross-examine the DCS's witnesses.

---

[2] In his brief, T.E. baldly asserts that his mother's testimony would have proven that termination of his parental rights was not in the child's best interests.  Appellant's Br. at 2-3.

[3] Indiana Trial Rule 53.5 in pertinent part provides: "Upon motion, a trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence."

Under the facts and circumstances before us, there was overwhelming evidence admitted to support termination of T.E.'s parental rights. Moreover, when the trial court denied T.E.'s motion for a continuance, the trial court stated:

> [G]iven the fact that we don't even know what [T.E.'s mother is] going to testify to and there has been testimony even from the father that he's never had independent care of this child or any of his other fifteen children, I'm not sure what she could add that would overcome whatever evidence I already have.

Tr. p. 203. We agree with the trial court, particularly in light of the fact that T.E. received the first continuance he requested so that he could present his Mother's testimony.

For all of these reasons, we conclude that T.E. cannot establish that he was prejudiced by the trial court's denial of his motion for a continuance; therefore, the trial court did not abuse its discretion when it denied T.E.'s motion.

Affirmed.

RILEY, J., and CRONE, J., concur.