Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 29 2014, 10:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RUTH JOHNSON**
Marion County Public Defender

**STEVEN J. HALBERT**
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINE REDELMAN**
Deputy Attorney Generals
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE INVOLUNTARY
TERMINATION OF PARENT-CHILD
RELATIONSHIP OF G.M. AND T.W., MINOR
CHILDREN AND THEIR FATHER, G.M.

G.M. (FATHER),⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Appellant,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀No. 49A05-1402-JT-000086
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
INDIANA DEPARTMENT⠀⠀⠀⠀⠀)
OF CHILD SERVICES and⠀⠀⠀⠀⠀)
CHILD ADVOCATES, INC.,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Appellees.⠀⠀⠀⠀⠀⠀⠀⠀)

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Larry Bradley, Magistrate
Cause No. 49D09-1308-JT-016140, 49D09-1308-JT-016143

**September 29, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

G.M.'s (Father's) parental rights to his children, G.M. and T.W., were terminated by the Marion Superior Court. Father appeals and argues that the evidence was insufficient to support the trial court's termination of his parental rights.

We affirm.

## Facts and Procedural History

In May 2009, after DCS received reports of inappropriate discipline and drug abuse, A.W. ("Mother") and Father began participating in a program of Informal Adjustment with respect to their child, G.M. As part of the Informal Adjustment, Mother and Father agreed to participate in services provided by DCS, including home-based services and random drug screens. On January 20, 2010, the Informal Adjustment was closed after Mother and Father continued to test positive for illegal drugs and DCS continued to receive reports of inappropriate physical discipline of G.M. and Mother's other children. The same day, DCS filed a Child In Need of Services ("CHINS") petition for G.M. and the juvenile court held an initial hearing on the petition. After the hearing, the court ordered that G.M. remain in his parents' home.

Several weeks later, on March 2, 2010, DCS notified the juvenile court that G.M. had been removed from the home after a domestic violence incident occurred between Mother and Father and in front of G.M. The court authorized G.M.'s removal and placement with the child's paternal grandmother. The court adjudicated G.M. a CHINS on July 8, 2010 and ordered Mother and Father to obtain and maintain stable income and housing and participate in reunification services, including home-based counseling, a domestic violence program, and drug and alcohol assessments. The court also ordered

2

that Mother and Father successfully complete all the recommendations made pursuant to their drug and alcohol assessment.

On August 23, 2011, DCS notified the court that it had received a report that Father spent time with G.M. while intoxicated, that Father had been involved in a domestic violence incident with Mother, and that Father had been arrested on two active warrants for driving with a suspended license. The same day, both parents admitted they were still using marijuana and illegal drugs, and a firearm was discovered inside the house. DCS filed a CHINS petition for T.W., who had been born on October 25, 2010, and removed her from Mother and Father's home to the child's paternal grandmother's home. The juvenile court adjudicated T.W. a CHINS on January 11, 2012. The same day, the trial court authorized the children's placement in foster care, rather than in the care of their paternal grandmother, due to a report that the grandmother had allowed Father to sleep in her home, had allowed unauthorized family members who had a history with DCS to care for the children, and had admitted that caring for the children was overwhelming her.

At the July 11, 2012 permanency hearing, the court changed G.M. and T.W.'s permanency plan to adoption[1] after finding that Father (1) failed to complete the ordered services, (2) failed to find stable housing or employment, and (3) failed to follow through with substance abuse treatment. The court held a review hearing on April 17, 2013, at which it learned that Father had moved to Florida and had not stayed in contact with his attorney or family case manager. On August 8, 2013, DCS filed its petition to terminate

---

[1] Mother consented to the children's adoption.

3

Father's parental rights to G.M. and T.W. The court held a hearing on the petition on January 22, 2014, at which Father appeared telephonically. After the hearing, the court issued an order terminating Father's parental rights to G.M. and T.W. The order provided, in relevant part:

16. [Father] left Indiana, without notifying the family case manager, in February of 2013, and currently resides in Georgia

17. Prior to leaving Indiana, [Father] was given the opportunity to participate in services through multiple service referrals.

18. The IDCSMC did not receive documentation that any service was successfully completed.

19. [Father] testified he failed to complete services with the exception of domestic violence classes.

20. [Father] testified he is wishing to do services on his own at this time. He has previously represented to the family case manager that he was going to finish services.

21. Due to issues of anxiety and depression, it was recommended by a home based therapist that [Father] take medication. He failed to make the effort to turn in his paperwork for Wishard Advantage to pay for prescriptions.

22. [Father's] employment and housing has been inconsistent. He has resided with his girlfriend [in Georgia] since July of 2013.

23. [Father] has been temporarily employed for two months, and he believes this employment will become permanent in February 2014, at a pay rate of $19.35 per hour.

24. [Father] has phone contact with his children, approximately once a month. He visited [T.W.] and [G.M.] once, in 2013.

25. There is a reasonable probability that the conditions that resulted in the children's removal and continued placement outside the home will not be remedied by their father. [Father] failed to successfully complete services, after given many free referrals, prior to leaving Indiana and it is not

4

reasonably probable that he will now undertake and complete services successfully now that he will be required to obtain them on his own.

26. Continuation of the parent-child relationship poses a threat to the children's well-being as it would present a barrier to permanency through adoption after being in the system for so long.

27. [G.M.] resides with his paternal grandmother in Florida. This placement is pre-adoptive and [G.M.] has been observed as appearing very comfortable and bonded in the home which is his half-brothers residence as well.

28. [T.W.] is in a pre-adoptive placement with a paternal cousin. She is loved and having her needs met

29. Termination of the parent-child relationship is in the best interests of the children. Termination would allow for them to be adopted into a stable and permanent home where their needs will be safely met.

30. There exists a satisfactory plan for the future care and treatment of the children, that being adoption.

Appellant's App. pp. 26-27.

Father now appeals.

## Standard of Review

We have long had a highly deferential standard of review in cases involving the termination of parental rights. In re D.B., 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. Id. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Id. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. Id. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a

5

parent-child relationship only if it is clearly erroneous.  Id.  Clear error is that which "leaves us with a definite and firm conviction that a mistake has been made."  J.M. v. Marion Cnty. Office of Family & Children, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), trans. denied.

**Discussion and Decision**

"The purpose of terminating parental rights is not to punish parents but to protect their children.  Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents."  In re S.P.H., 806 N.E.2d 874, 880 (Ind. Ct. App. 2004) (citation omitted). Indeed, parental interests "must be subordinated to the child's interests" in determining the proper disposition of a petition to terminate parental rights.  In re G.Y., 904 N.E.2d 1257, 1260 (Ind. 2009).

Indiana Code section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:

> (2) The petition must allege:
> (B) that one (1) of the following is true:
>     (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>     (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>     (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) that termination is in the best interests of the child; and
> (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove "each and every element" by clear and convincing evidence. G.Y., 904 N.E.2d at 1261; Ind. Code § 31-37-14-2.  Clear and convincing evidence need

6

not establish that the continued custody of the parents is wholly inadequate for the child's very survival. Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). Rather, it is sufficient to show by clear and convincing evidence that the child's emotional development and physical development are put at risk by the parent's custody. Id. If the court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

## 1. Conditions Remedied

Father challenges the sufficiency of the evidence to support the juvenile court's termination of his parental rights to G.M. and T.W. Specifically, Father argues that "[t]here was no evidence at the termination hearing that the conditions which led to removal had continued or were still a problem at the time of the termination hearing" and that "[t]here was no evidence that [Father] was a threat to his children's health or wellbeing." Appellant's Br. at 3. Father challenges the trial court's finding number 25, which, after noting that Father had failed to complete the ordered reunification services, provided that the conditions that led to the children's removal were not likely to be remedied by Father. Father contends that this finding is "directly contradicted by the record and the other findings which show that the reasons for the CHINS and removal had nothing to do with [Father's] completion of services" but instead resulted from Father's abuse of drugs, the domestic violence between Father and Mother, and the benefit the children would receive from the stability resulting from adoption. Appellant's Br. at 4-5.

In determining whether there is a reasonable probability that the conditions that resulted in the removal of the children would not be remedied, a trial court must judge a parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. It must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. Id. Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. A.F. v. Marion Cnty. Office of Family & Children, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), trans. denied. The trial court may also properly consider, as evidence of whether conditions will be remedied, the services offered to the parent by DCS, and the parent's response to those services. Id. A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth are permanently impaired before terminating the parent-child relationship. In re E.S., 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

Father argues that, because his last referral for services was in 2011, "[i]t is unreasonable to claim that [Father's] failure to complete [the ordered] services is an ongoing condition existing at the time of the hearing when no services had been offered for the past several years." His arguments are invitations for us to reweigh the evidence, which we cannot do. See In re D.D., 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses). DCS presented evidence of Father's

8

repeated non-compliance with services, including evidence that Father received four referrals for home-based therapy and five referrals for home-based case management with goals of stable housing, employment, and parenting skills. His participation in these programs was minimal, and he failed to complete them. He received two referrals for domestic violence classes, which he claimed to have completed but admitted that he received no certificate of completion. His disinterest in completing services ordered by the juvenile court speaks to the continuing lack of commitment that led to his children's removal. Furthermore, as the juvenile court noted, because Father could not be persuaded to participate in these services when they were provided for him at no cost, it is unlikely that he will complete them when he is required to obtain and pay for them on his own.

All of this evidence supports the trial court's findings, which in turn support its conclusion that the conditions that resulted in the children's removal will not be remedied. See A.J. v. Marion Cnty. Office of Family & Children, 881 N.E.2d 706 (Ind. Ct. App. 2008) (holding that evidence in action to terminate father's parental rights was sufficient to support finding that reasons for placement of daughter outside family home would not be remedied, although father did not have custody of daughter at the time of her removal from the family home; father admitted that he had not successfully demonstrated the ability or willingness to appropriately parent daughter, and there was evidence of father's lack of participation in services, his failure to stay in contact with the case manager, and his history of drug use); In re B.J., 879 N.E.2d 7 (Ind. Ct. App. 2008) (concluding that evidence supported trial court's finding of reasonable probability that

9

conditions which led to removal of child from home, namely father's neglectful treatment of child, would not be remedied, as grounds for terminating father's parental rights; record showed that despite a multitude of services offered to father over a fourteen-month period, father had still not completed substance abuse intensive outpatient treatment or home-based counseling at the time of the termination hearing, and father failed to provide proof of stable housing or employment).

## 2. Threat to Children's Well-Being

Termination of parental rights is proper where the child's emotional and physical development is threatened. In re T.F., 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), trans. denied. The court need not wait until a child is harmed irreversibly such that her physical, mental, and social development is permanently impaired. Id.

Father argues that the children's physical and emotional development is no longer threatened because he no longer suffers from substance abuse and he no longer has a reason to fight with the children's mother. However, the record shows that Father failed to cooperate with DCS after his children were removed and failed to complete the ordered services to address his substance abuse and domestic violence issues. He has failed to maintain stable housing and employment for most of the children's lives. And he has not seen G.M. since January 2013 and has seen T.W. only once in nearly a year. Father's argument amounts once again to a request that we reweigh the evidence, which we will not do. Based on the record before us, we are satisfied that the facts support the trial court's conclusion that continuation of the parent-child relationship poses a threat to the children's well-being. See In re C.C., 788 N.E.2d 847 (Ind. Ct. App. 2003)

10

(concluding that evidence was sufficient to support order terminating father's parental rights; child had been removed from father's custody for at least six months pursuant to dispositional decree, father had failed to complete any of required services pursuant to case plan, child had lived with foster family since he was ten days old, and foster family had bonded with child and intended to adopt).

## Conclusion

We will reverse a termination of parental rights only upon a showing of clear error, that is, that which leave us with a definite and firm conviction that a mistake has been made.  See In re L.B., 889 N.E. 326, 342 (Ind. Ct. App. 2008).  We find no such error in this case.  Accordingly, we affirm the trial court's judgment terminating Father's parental rights to G.M. and T.W.

Affirmed.

RILEY, J., and CRONE, J., concur.