## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 16 2017, 6:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Marjorie Newell
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of A.E.S.H., P.M.H. & J.G.A.H., Minor Children,

K.M.H., Mother,

*Appellant-Respondent*,

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*.

February 16, 2017

Court of Appeals Case No.
40A01-1608-JT-1998

Appeal from the Jennings Circuit Court

The Honorable Jon W. Webster, Judge

Trial Court Cause Nos.
40C01-1602-JT-10
40C01-1602-JT-11
40C01-1602-JT-12

**Brown, Judge.**

[1] K.M.H. ("Mother") appeals the involuntary termination of her parental rights with respect to her children A.E.S.H., P.M.H., and J.G.A.H. (the "Children"). Mother raises one issue which we revise and restate as whether the trial court abused its discretion in denying Mother's motion to continue the termination fact-finding hearing. We affirm.

## *Facts and Procedural History*

[2] Mother and C.H. ("Father") had J.G.A.H., born February 20, 2003, P.M.H., born February 15, 2005, and A.E.S.H., born November 21, 2006. On June 13, 2014, the Indiana Department of Child Services ("DCS") filed verified petitions alleging that the Children were children in need of services ("CHINS"). DCS alleged that Mother had failed to ensure consistent attendance, proper behavior, and/or adequate academic achievement of the Children at school, failed to provide a safe and sanitary home with functioning utilities and appliances, failed to ensure proper hygiene for the Children, had verbally agreed to an informal adjustment but then not followed through, and that DCS had an extensive history with this family for substantially the same issues. The Children were removed because the home conditions were very poor with no furniture, water, stove, or refrigerator.

[3] On October 8, 2014, the court adjudicated the Children to be CHINS, and on November 20, 2014, it held a dispositional hearing at which Mother appeared.

The court ordered Mother to participate in all services and programs as recommended by DCS and service providers.

[4] On June 26, 2015, the court entered an Order Approving Permanency Plan finding that Mother had not completed her mental health assessment, not followed through with the recommendation of individual therapy stemming from the assessment, not consistently utilized her parent aide services, refused to submit to any drug screens, attended only half of her scheduled supervised visitations during the current reporting period, and had not visited the Children since visits were moved from the family home on March 16, 2015.

[5] On February 10, 2016, DCS filed petitions for the involuntary termination of Mother's parental rights. On February 12, 2016, the court entered an order which scheduled an initial hearing for February 22, 2016, and a trial for April 5, 2016, and which stated: "The parents must appear for trial, or they may lose forever, their right to contest termination of their parental rights." Appellant's Appendix at 24.

[6] In an Entry on Initial Hearing dated February 29, 2016, the court indicated that it held a hearing on February 22, 2016, at which Mother was present. The court's order found that it informed Mother of her rights including the right to a fact-finding hearing, to subpoena witnesses, and to cross-examine witnesses, and that Mother understood her rights and had no questions regarding her rights.

[7] On March 29, 2016, Mother's counsel filed a motion for continuance of the April 5, 2016 trial.[1] That same day, the court granted a continuance and scheduled a hearing for July 7, 2016.

[8] On July 7, 2016, the court held a hearing at which it stated that a fact finding hearing was scheduled, that Mother was not present, that her attorney was present, and that Mother had called the court that morning and spoke to one of the court's staff. Mother's counsel stated that she received a phone call from Mother indicating that Mother's ride did not come to pick her up, and Mother's counsel moved for a continuance. DCS's counsel objected to the continuance on the basis that Mother knew of the hearing and did not reach out to DCS or the court appointed special advocate for transportation. The court denied the motion for a continuance and stated:

> The Court notes that this is a Fact Finding hearing, has been set sent [sic] March 29th. – More than ample time for [Mother] to make reliable, dependable – plans to have, to be here or to get transportation for this hearing. – These cases are put on a fast track for a reason and that is because we need finality for all involved.

Transcript at 4.

[9] Zenda Rogers, a wraparound facilitator responsible for case management and facilitating child and family team meetings, testified that she stressed it several

---

[1] The record does not contain a copy of this motion.

times that Mother had the opportunity to call her to have someone transport them and that Mother had been provided transportation several times to meetings. Rebecca Cunningham, a therapist at Centerstone, testified that she completed an intake evaluation of Mother in January 2016 and recommended individual therapy, family therapy, and case management services. Cunningham scheduled an appointment a week after the evaluation, but Mother failed to show for that appointment as well as a subsequent appointment. Cunningham did not hear back from Mother.

[10] Pam Ball, a family support specialist, testified that Mother was inconsistent with showing up for appointments and visitations. Ball also testified that she offered Mother transportation. Specifically, Ball stated that Mother and Father would just call and say that they could not make it because they did not have transportation, that she would offer transportation, and then Mother and Father would say that they were not at home. She testified that the first visit in the parents' home occurred in February 2015, the home was unsanitary, there were dangerous items such as tools laying around the home, and there were animals in the home "that appeared to be less than friendly." *Id.* at 58. The home was cleaned up to pass DCS inspection, but it deteriorated quickly resulting in no running water and an enormous amount of pests, cockroaches, and rodents. She indicated that visits were moved from the home and Mother came to a visit at Centerstone in March 2015 and said that she "would not bring her a-- back into Centerstone." *Id.* at 60. Ball also testified that Mother had not made

contact with her or attended any visitation through Centerstone since March 23, 2015.

[11]    Debra Satterfield, a DCS supervisor, testified that there had been thirty reports, eleven substantiated assessments, and three previous cases over the years. She testified that she had problems contacting Mother and that she would not answer her door. She stated that she offered Mother transportation and had transported her to court several times, to an assessment, and occasionally to visits. She testified that the home was cleaned near the end of January 2015 but at the time the home visits ended in March 2015 it was roach infested, dirty, trash was piled up outside and inside the home, and they had no water again.

[12]    Julia Barnette, a family case manager, testified that she had been the family case manager since September 2015 and that she did not hold a transition meeting with the parents because she was unable to make contact with them. Barnette testified that she went to the home twice, but no one answered the door, that she made a referral for a gas voucher to help with transportation, and that Mother did not comply with recommendations while she was the case manager. She also testified that Mother missed appointments and did not contact her prior to those appointments to indicate that she needed help with transportation.

[13]    On August 1, 2016, the court entered an order terminating Mother's parental rights. The order contains detailed findings of fact and concludes that there is a reasonable probability that the conditions which resulted in the Children's

removal and continued placement outside the home will not be remedied, that the continuation of the parent-child relationship poses a threat to the Children's well-being, that termination of Mother's parental rights is in the Children's best interests, and that adoption is a satisfactory plan for the Children.

### *Discussion*

[14] The issue is whether the trial court abused its discretion by denying Mother's motion to continue the termination hearing. Mother argues that the court abused its discretion in denying her motion to continue because she was denied the opportunity to stand and confront the witnesses against her and provide her own reasons and renditions of the facts. She asserts that she was unable to provide her counsel with advice and information in preparing for questions. She also asserts that she was not afforded the opportunity to attend and participate. In support of her argument, Mother relies on *Rowlett v. Vanderburgh Cty. Office of Family & Children*, 841 N.E.2d 615 (Ind. Ct. App. 2006), *trans. denied*.[2]

[15] DCS argues that Mother had over two months to arrange transportation to the hearing, DCS and others offered to provide Mother transportation when she needed it, Mother did not show good cause for a continuance, and Mother has not shown any specific harm caused by her failure to appear and has not

---

[2] Mother does not challenge the trial court's conclusions that there is a reasonable probability that the conditions which resulted in the Children's removal and continued placement outside the home will not be remedied, that the continuation of the parent-child relationship poses a threat to the Children's well-being, that termination of Mother's parental rights is in the Children's best interests, or that adoption is a satisfactory plan for the Children.

disclosed any testimony she would have offered to overcome the substantial evidence supporting the termination of her parental rights.

[16] A trial court's decision to grant or deny a motion to continue is subject to abuse of discretion review. *In re K.W.*, 12 N.E.3d 241, 244 (Ind. 2014) (citing *Rowlett*, 841 N.E.2d at 619). Ind. Trial Rule 53.5 provides that a court may grant a continuance upon a showing of "good cause." Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each circumstance. *J.M. v. Marion Cty. Office of Family & Children*, 802 N.E.2d 40, 43 (Ind. Ct. App. 2004), *trans. denied*. A decision on a motion for continuance will be reversed only upon a showing of an abuse of discretion and prejudice resulting from such an abuse. *Id.* "An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion," but "no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial." *Id.* The Indiana Supreme Court has explained that an abuse of discretion analysis consists of an "evaluation of facts in relation to legal formulae. In the final analysis, the reviewing court is concerned with the reasonableness of the action in light of the record." *Id.* at 44 (citing *Tapia v. State*, 753 N.E.2d 581, 585 (Ind. 2001)). Thus, a trial court's ruling should be set aside only if it is clearly against the logic and effect of the facts and circumstances before the court, and we will not substitute our judgment for that of the trial court. *Id.*

[17] In *Rowlett*, the father, who was incarcerated, had expressed a desire for reunification starting on the very day his children were removed and was active in the CHINS case. 841 N.E.2d at 618-619. The father requested a continuance of the termination hearing until after his release, which was denied by the trial court. *Id.* at 618. This Court concluded that the trial court abused its discretion in denying the request for a continuance and noted that father had been incarcerated for all but two months of the action and had not been given a full opportunity "to participate in services offered by the OFC directed at reunifying him with his children upon his release from prison." *Id.* at 619.

[18] Unlike the incarcerated father in *Rowlett*, who lacked an opportunity to participate in services and took substantial advantage of the resources available to him while he was incarcerated, Mother was not incarcerated and has been offered services over the course of the two-year period of the underlying CHINS case to improve her fitness to parent the Children. Mother was represented by counsel at the hearing, she does not specifically indicate what evidence she would have produced had she been present, and she does not challenge any of the trial court's findings or conclusions. The wraparound facilitator, the family support specialist, the DCS supervisor, and the family case manager all testified regarding their offer to assist or assistance with transportation including the DCS supervisor's testimony that she had transported Mother to court several times. We also note that Mother was previously granted a continuance and the hearing was rescheduled from April 5, 2016, to July 7, 2016. Under the circumstances, we cannot say that Mother has shown good cause for another

continuance or demonstrated that she was prejudiced. We cannot say that the court abused its discretion in denying Mother's motion for a continuance.

## *Conclusion*

[19] For the foregoing reasons, we affirm the termination of Mother's parental rights.

[20] Affirmed.

Vaidik, C.J., and Bradford, J., concur.