Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**KRISTIN R. WILLADSEN**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General

**ABIGAIL R. MILLER**
Certified Legal Intern
Indianapolis, Indiana



FILED
Oct 10 2014, 9:49 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE TERMINATION OF THE                )
PARENT-CHILD RELATIONSHIP OF                )
Jo.N. and Ja.N. (Minor Children) and        )
                                            )
T.N. (Mother),                              )
                                            )
    Appellant-Respondent,              )
                                            )
      vs.                         )   No. 18A02-1403-JT-217
                                            )
INDIANA DEPARTMENT OF CHILD                 )
SERVICES,                                   )
                                            )
    Appellee-Petitioner.               )

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Kimberly S. Dowling, Judge
The Honorable Brian Pierce, Magistrate
Cause Nos. 18C02-1307-JT-19 and -20

**October 10, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

T.N. ("Mother") appeals the trial court's termination of her parental rights to her two children, Jo.N. and Ja.N.  We affirm.

## Facts and Procedural History

Mother gave birth to Jo.N. in November 2007 and to Ja.N. in April 2009.  In February 2014, the trial court issued nearly identical termination orders regarding the children that read in pertinent part as follows:[1]

2.  The child[ren were] removed from the care of [their] mother on February 23, 2012.  On February 27, 2012 this Court ordered that the child[ren] remain detained and authorized continued placement with relatives.

3.  The child[ren were] removed from mother because mother left the child[ren] with a care-giver for several days; that care-giver could not successfully contact mother, and the care-giver could no longer provide child care for the child[ren].  After a fact-finding, the child[ren were] adjudicated to be [Children] In Need of Services (CHINS).

4.  This Court ordered that mother submit to random drug screens, participate in parenting education and home-based case management, maintain suitable housing, keep all appointments regarding services and maintain contact with the DCS [Department of Child Services] family case manager.  Upon securing suitable housing, this Court authorized DCS to begin a trial home visit with mother.  On July 15, 2012, the child[ren were] placed in a trial home visit with mother.

5.  Mother tested positive for amphetamine and methamphetamine on October 18, 2012; positive for cocaine and high amounts of hydrocodone on November 6, 2012; and missed a screen, which this court counts as a positive screen, on November 30, 2012.  Due to mother's drug usage, this Court authorized DCS to remove the

---

[1] The orders occasionally refer to the parties by their full names or as "child."  We use "Mother" and initials where appropriate.

child[ren] from mother's care should she either miss any drug screens or test positive.

6. On January 22, 2013, DCS filed a motion requesting removal of the child[ren]. At that time, mother admitted to continued usage of drugs not prescribed to her. Additionally, mother left the [children] with a babysitter not yet vetted by DCS and Jo.N. was fondled by that babysitter. Further, on January 21, 2013 Jo.N. reported that [she] woke up from a nap and could not find [her] mother and that there was another unauthorized adult in the home, asleep at that time. This Court granted DCS's motion to have the children removed from mother's care and placed the children in licensed foster care and soon thereafter to relative care-givers. The child[ren remain] in that placement to date.

7. After removal of the children on January 22, 2013, mother indicated that she would not attend supervised visitation and began cancelling visitations. This Court held a thirty (30) day review hearing on February 25, 2013 and found that mother had been non-compliant with court ordered visitations and services.

8. Mother continued to be non-compliant with court ordered services at the time of the Permanency Hearing. Mother was failing to maintain contact with the case manager, failed to engage in substance abuse treatment, failed to regularly engage in individual therapy, failed to regularly attend meetings with her home-based case worker, and failed to regularly make herself available for drug screens. Additionally, mother was evicted from her apartment and failed to maintain employment.

9. Due to a pattern of missed visits, and due to the emotional stress placed on the child[ren] because of mother's missed visits, this Court suspended mother's visitation on July 31, 2013. On October 4, 2014 [sic], this Court ordered that DCS was no longer obligated to provide reunification services to mother since she had failed to engage in reunification services in any meaningful way. When mother did appear at visitation, she would not engage her children in any meaningful way.

10. On September 24, 2013, Mother pled guilty to conversion, a class A misdemeanor.

11. That at the time the fact-finding was held [on DCS's petitions to terminate Mother's parental rights in January 2014], mother was

3

incarcerated, having been charged with Conspiracy to Commit Dealing in Methamphetamine, a Class B Felony, and Unlawful Sale of a Precursor, a Class D Felony.

12. Mother failed to make any progress in therapy. She demonstrated no insight into why her children remained out of her care and failed to take any personal responsibility and blamed others for the continued removal of the child[ren]. Out of eighteen (18) scheduled therapy sessions, mother failed to appear at thirteen (13) of those scheduled sessions.

13. This Court has failed to see Mother demonstrate any responsibility or improvement in parenting during the course of this case. When the child[ren were] placed in her care, the pattern of neglect continued and required the removal of the child[ren] from her care.

14. The child[ren are] placed in a safe, stable and loving home with [foster parents]. The [foster parents] intend to adopt the child[ren] if given that opportunity.

15. That the CASA [court-appointed special advocate] agrees that it is in the best interest of the child[ren] to terminate the parental rights of Mother.

16. That father of the child[ren], C.N., has executed a consent to adoption that will allow the [foster parents] to adopt the child[ren] if mother's parental rights are terminated.

17. That based on the foregoing, there is a reasonable probability that the conditions that resulted in the child[ren's] removal will not be remedied.

18. That based on the foregoing, there is a reasonable probability that the continuation of the parent/child relationship herein poses a threat to the well being of the child[ren].

19. Termination of the parent/child relationship is in the best interest of the child[ren].

20. The Indiana DCS has a satisfactory plan for the care and treatment of the child[ren], which is adoption.

4

21. The Indiana DCS has proven their [sic] petition herein by clear and convincing evidence.

IT IS NOW THEREFORE ORDERED that the parent/child relationship between Mother [and the children] is hereby terminated together with all rights and privileges contained therein.

Appellant's App. at 62-64.[2] Mother now appeals.

## Discussion and Decision

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Matter of M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. "However, the trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination of the parent-child relationship." *In re J.S.*, 906 N.E.2d 226, 231 (Ind. Ct. App. 2009). "The purpose of terminating parental rights is not to punish parents but to protect their children. Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents." *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004) (citation omitted).

---

[2] Indiana Appellate Rule 50(A)(1) states, "The purpose of an Appendix in civil appeals … is to present the Court with copies of only those parts of the record on appeal that are necessary for the Court to decide the issues presented." An appellant's appendix in a civil appeal must contain "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal[.]" Ind. Appellate Rule 50(A)(2)(f). A substantial portion of Mother's 165-page appendix consists of subpoenas, subpoena returns, and transport orders, none of which are necessary to decide the issue that Mother raises on appeal. Also, we remind Mother's counsel that an appellant's statement of facts "shall be in narrative form and shall not be a witness by witness summary of the testimony." Ind. Appellate Rule 46(A)(6)(c).

Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate parental rights must allege

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove "each and every element" by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009); Ind. Code § 31-37-14-2. "The trial court need not wait until the child is irreversibly harmed such that her physical, mental, and social

6

development is permanently impaired before terminating the parent-child relationship." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed*. If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re I.A.*, 903 N.E.2d 146, 152-53 (Ind. Ct. App. 2009). We neither reweigh evidence nor judge witness credibility. *Id*. at 153. We consider only the evidence and reasonable inferences therefrom that are favorable to the trial court's judgment. *Id*. "When reviewing findings of fact and conclusions thereon in a case involving termination of parental rights, we apply a two-tiered standard of review." *Id*. We first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id*. "In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous." *In re C.A.*, 15 N.E.3d 85, 92-93 (Ind. Ct. App. 2014). "Clear error is that which 'leaves us with a definite and firm conviction that a mistake has been made." *Id*. at 93 (quoting *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*).

Mother does not challenge the validity of any of the trial court's findings of fact. Instead, she complains that "the trial court failed to consider numerous important factors favorable to her argument that her parental rights should not be terminated. There is no evidence that [Mother] ever abused her children and little evidence that she neglected her

7

children in any way." Appellant's Br. at 12. On the contrary, there is plenty of evidence that Mother neglected the children on multiple occasions. The children were originally removed from Mother's home because she left them for several days in the home of a caregiver who was unable to contact Mother. Mother tested positive for illegal or unprescribed drugs several times during the children's trial home visit in 2012, and she left the children with an unapproved babysitter who allegedly fondled Jo.N. On another occasion, Jo.N. awoke from a nap and could not find Mother but did find an unauthorized adult asleep in the home.

Moreover, Mother missed numerous visits with the children, which caused them significant emotional distress, and she failed to engage with them when she did show up. She was also noncompliant with services (including substance abuse treatment), failed to maintain employment, and was twice evicted from her residence.[3] In September 2013, Mother pled guilty to class A misdemeanor conversion. And at the time of the factfinding hearing in January 2014, Mother was incarcerated on charges of class B felony conspiracy to commit dealing in methamphetamine and class D felony unlawful sale of a precursor. Thus, it is clear from the record that while Mother may not have abused the children, she repeatedly neglected them and failed to act in their best interests.

In a single sentence at the beginning of the argument section of her brief, Mother purports to challenge the validity of the trial court's conclusions regarding the factors mentioned in Indiana Code Section 31-35-2-4(b)(2)(B) and -(C). Mother's argument is

---

[3] Consequently, we are unimpressed by Mother's statement that she "maintained the same residence from July 2012 to January 2013." Appellant's Br. at 13. And based on her incarceration for two pending felony charges, we are unpersuaded by her statement that "she would have adequate housing available at her mother's home where both she and the children could stay." *Id*.

essentially an invitation to reweigh the evidence in her favor. *See* Appellant's Br. at 13 ("[Mother] feels that the trial court gave no weight to the positive aspects pointed out above."). This we may not do. *I.A.*, 903 N.E.2d at 153. The trial court's conclusions are amply supported by its uncontradicted findings of fact. Mother has failed to establish that the trial court's judgment is clearly erroneous, and therefore we affirm.

Affirmed.

RILEY, J., and MATHIAS, J., concur.