## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 15 2015, 10:00 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Robert H. Bellinger
The Bellinger Law Office
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of: R.J.J., T.J., and R.L.J. (Minor Children) and<br><br>R.A. (Father),<br><br>*Appellant-Respondent,*<br><br>v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner* | May 15, 2015<br><br>Court of Appeals Case No. 02A04-1410-JT-513<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Charles F. Pratt, Judge<br><br>The Honorable Lori K. Morgan, Magistrate<br><br>Case Nos. 02D08-1312-JT-166, 167, 168 |

**Crone, Judge.**

# Case Summary

[1] R.A. ("Father") appeals the involuntary termination of his parental rights to his minor children R.J.J., T.J., and R.L.J. ("the Children"). We affirm.

# Facts and Procedural History[1]

[2] Father and Mother are the parents of the Children. In February 2013, the Indiana Department of Child Services ("DCS") investigated reports of neglect regarding the Children. Those claims were substantiated and DCS filed petitions alleging that each child was a Child in Need of Services ("CHINS"). The Children were removed from both parents' care on February 1 and 7, 2013. During CHINS proceedings held on March 5, 2013, Father admitted the following allegations:

> A. Father is the father of R.J.J., born on February 24, 2002; T.J., born on January 21, 2007; and R.L.J., born on September 13, 2011.[2]
>
> B. The Children are all under eighteen years of age.
>
> C. [] Father was the victim in domestic violence and physical confrontations [with Mother] in the presence of the Children in 2012.
>
> D. Despite a Protective Order, Mother and Father have continued to live together in the same household with the Children, however, Mother has since moved out and has her own residence.

---

[1] In its termination order, the trial court also terminated the parental rights of C.A. ("Mother"). Mother does not appeal, and therefore we will concentrate on the relevant facts and procedural history most specific to Father. We note that the record sometimes refers to the parties by their full names. We use "Father," "Mother," "the Children," and each child's initials where appropriate.

[2] Father believes that he is the father of all three children even though Father's paternity has not been established regarding R.J.J. and T.J. At the March 5, 2013, disposition hearing, the trial court ordered Father to initiate proceedings to establish his paternity of R.J.J. and T.J. As of the date of termination, Father had still failed to establish paternity.

E. Father has a history of illegal drug use including the use of marijuana and cocaine.

F. Father has admitted to the use of illegal drugs and tested positive for cocaine in recent drug screens.

G. Father has a criminal history related to domestic violence involving Mother in the presence of the Children in 2007.

H. Father has a prior history and continued involvement with the Indiana Department of Child Services related to domestic violence, illegal drug use, neglect, and inadequate conditions of the home.

I. Father has left the Children without appropriate adult supervision on one occasion in which Father went to the store 2 blocks from the home to get milk for the children and was gone for approximately 10 minutes while [M]other was hospitalized.

J. Father has other [c]hildren for which he does not have custody and/or for which his parental rights have been terminated.

Appellant's App. at 13-14.

[3] Following the Children's removal from the home, DCS made referrals that were designed to assist Father "in remedying the reasons for removal and the reasons for placement of the children outside the home as well as to assist him in providing for the basic necessities of a suitable home" in which to raise the Children. *Id*. at 14. Specifically, Father was referred to the Center for Non-Violence to attend the "Batterer's Intervention Program." *Id*. Father was expelled from the program on four separate occasions due to absences and nonparticipation. At the time of his fourth expulsion from the program, Father had attended only five of the twenty-nine required sessions. DCS also referred Father to the Bowen Center for a drug and alcohol assessment. After Father completed the assessment, his evaluator recommended that he participate in forty hours of substance abuse counseling. Father completed only four hours of

the counseling. DCS referred Father for a second assessment during which Father revealed to his evaluator that he was using cocaine once per week. The evaluator diagnosed Father with cocaine dependence and recommended that Father complete seventy-two hours of drug and alcohol counseling and attend "AA/NA meetings" one time per week. *Id*. at 15. Father completed only fourteen hours of counseling and failed to attend meetings.

[4] Regarding visitation with the Children, DCS referred Father for supervised visitation. From March 2013 until November 2013, Father attended only ten of sixteen scheduled in-home visits. Father's visits were later moved to in-office visits after DCS learned that, despite a no-contact order between the parents, Mother was present outside Father's home during one of the visits and had unsupervised contact with the Children.

[5] DCS filed petitions to terminate both Father's and Mother's parental rights to all three children on January 10, 2014. Following four factfinding hearings, the trial court made extensive findings of fact regarding Father's failure to participate in the numerous programs and services offered to assist him with sobriety, employment, housing, and domestic violence. The trial court found that the Children were removed from the home because Father was unable to provide a safe, stable, and drug-free home environment for the Children and was engaging in incidents of domestic violence with Mother. The court found that at the time of the termination hearing, Father and Mother continued to abuse drugs and had failed to address their violent and destructive relationship.

[6] Based upon the extensive findings of fact, the trial court concluded that: (1) there is a reasonable probability that the conditions that resulted in the removal of the Children and their continued placement outside the home will not be remedied by either Father or Mother; (2) there is a reasonable probability that the continuation of the parent-child relationship between the Children and both Father and Mother poses a threat to the well-being of the children; (3) termination of the parent-child relationship between both parents and the Children is in the best interests of the Children; and (4) DCS has a satisfactory plan for the care and treatment of the Children, which is adoption. Accordingly, the trial court determined that DCS had proven the allegations of the petition to terminate parental rights by clear and convincing evidence and therefore terminated Father's and Mother's parental rights. Only Father appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[7] "The purpose of terminating parental rights is not to punish parents but to protect their children. Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents." *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004) (citation omitted). Indeed, parental interests "must be subordinated to the child's interests" in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009).

[8] Indiana Code Section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:

> (2) The petition must allege:
>
> (A) that one (1) of the following is true:
>
> > (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> >
> > (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> >
> > (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

[9] DCS must prove "each and every element" by clear and convincing evidence. *G.Y.*, 904 N.E.2d at 1261; Ind. Code § 31-37-14-2. If the court finds that the

allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[10]  We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id.* We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which "leaves us with a definite and firm conviction that a mistake has been made." *J.M. v. Marion Cty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

# Section 1 – The trial court's conclusion that there is a reasonable probability that the conditions resulting in the Children's removal will not be remedied is not clearly erroneous.[3]

We first address Father's contention that the trial court erred in concluding that there is a reasonable probability that the conditions resulting in the Children's removal and continued placement outside his home will not be remedied. Our supreme court recently explained,

> In determining whether the conditions that resulted in the child[ren]'s removal … will not be remedied, we engage in a two-step analysis. First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. In the second step, the trial court must judge a parent's fitness as of the time of the termination proceedings, taking into consideration evidence of changed conditions – balancing a parent's recent improvements against habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation. We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 642-43 (Ind. 2014).

---

[3] Father also claims that DCS failed to present clear and convincing evidence that there is a reasonable probability that the continuation of the parent-child relationship between Father and the Children poses a threat to the Children's well-being pursuant to Indiana Code Section 31-35-2-4(b)(2)(B)(ii). Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS was required to establish only one of the three requirements of subsection (B). Because we find it dispositive, we need only address whether there is a reasonable probability that the conditions resulting in the Children's removal and continued placement outside of Father's home will not be remedied. *See* Ind. Code § 31-35-2-4(b)(2)(B)(i).

[12] In considering the conditions that resulted in the Children's removal and continued placement outside the home, the trial court found that Father and Mother have a history of domestic violence, sometimes in the presence of the Children. Father also has a long history of drug use and abuse which has resulted in an inability to provide a safe, stable, and drug-free environment for the Children. The record indicates that Father failed to meaningfully participate in any of the services offered by DCS to resolve these problems. In rejecting the treatment recommended and offered by DCS, Father minimized his substance abuse issues. At the time of the termination hearing, Father admitted that he continued to use cocaine on a weekly basis. We defer to the trial court's determination that Father's habitual patterns of conduct and unwillingness to participate in services outweigh his current unsubstantiated claims of improvement and indicate a substantial probability of future neglect. The trial court did not clearly err in concluding that there is a reasonable probability that the conditions resulting in the children's removal and continued placement outside of the home will not be remedied.

## Section 2 – The trial court's conclusion that termination of Father's parental rights is in the best interests of the Children is not clearly erroneous.

[13] Despite the ample evidence supporting the trial court's conclusion that there is a reasonable probability that the conditions resulting in the Children's removal will not be remedied, Father maintains that the trial court erred in determining that termination of his parental rights is in the best interests of the Children. In

determining the best interests of a child, the trial court must look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). "In doing so, the trial court must subordinate the interests of the parent to those of the child." *Id*. Children have a paramount need for permanency, which our supreme court has deemed a central consideration in determining a child's best interests. *E.M.*, 4 N.E.3d at 647-48. The trial court need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *Id*. We have held that recommendations of the case manager and court-appointed special advocate, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to establish by clear and convincing evidence that termination is in the child's best interests. *J.S.*, 906 N.E.2d at 236.

[14] Here, DCS family case manager Mary Connell testified that she believed that termination of Father's parental rights to the Children is warranted due to his minimal participation in services and his failure to benefit or show progress from those services as evidenced by his continued drug use. She noted that the children have been in foster care in excess of one year and opined that "at this point the [C]hildren are in need of permanency." Tr. at 45.

[15] Similarly, court-appointed special advocate Brooke Neuhaus stated that she believed that termination of Father's parental rights is in the best interests of the Children. She noted Father's "lack of follow through" with court-ordered services and how it had resulted in him not benefiting from services and continually testing positive for cocaine. *Id*. at 56. She emphasized that the

Children have been in foster care for more than one year and that they "do need permanency." *Id*. at 57.

[16] Father does not challenge the validity of these opinions but simply argues that he has a strong bond with the Children and that it is not in their best interests to sever that relationship. As noted earlier, the record is replete with evidence of Father's habitual patterns of poor decisionmaking, namely his violent relationship with Mother and his continued drug use. Despite ample opportunities, Father has not demonstrated sufficient commitment to remedying the conditions that resulted in the Children's removal from his care and continued placement outside the home. These Children are in need of permanency and cannot wait indefinitely for the safety and stability that Father appears unable and unwilling to provide. Under the circumstances, we cannot say that the trial court's conclusion that termination of Father's parental rights is in the best interests of the Children is clearly erroneous. Therefore, we affirm the trial court's order terminating Father's parental rights to R.J.J., T.J., and R.L.J.

[17] Affirmed.

Brown, J., and Pyle, J., concur.