## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 09 2020, 9:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deidre L. Monroe
Gary, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Termination of the Parent-Child Relationship of B.P. and K.G. (Minor Children) and J.P. (Mother),<br><br>*Appellant-Respondent,*<br><br>v.<br><br>Indiana Department of Child Services,<br><br>*Appellee-Petitioner.* | July 9, 2020<br><br>Court of Appeals Case No. 20A-JT-251<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Thomas P. Stefaniak, Jr., Judge<br><br>Trial Court Cause Nos. 45D06-1909-JT-222 45D06-1909-JT-223 |

**Mathias, Judge.**

The Lake Superior Court terminated J.P.'s ("Mother") parental rights to her two minor children. Mother appeals and argues that the trial court's order involuntarily terminating her parental rights is not supported by clear and convincing evidence.

We affirm.

## Facts and Procedural History

Mother's two children at issue in this case[1] are B.P., born on January 19, 2014, and K.G., born on May 14, 2015. B.P.'s father is deceased. K.G.'s father, Ka.G. ("Father") voluntarily terminated his parental rights to K.G.

The children were wards of the Department of Child Services ("DCS") from July 2016 through April 2018 due to parents' drug use. In June 2018, approximately two months after the prior Child In Need of Services ("CHINS") case was dismissed, law enforcement officers found the parents unconscious on a park bench with four-year-old B.P. and three-year-old K.G. unsupervised nearby. Mother admitted to using synthetic marijuana after Father fell asleep at the park. Mother was arrested and charged with possession of a synthetic drug. DCS initially left the children in Father's care, but shortly thereafter, they were placed in relative care.

---

[1] Mother has five other biological children. Her rights were previously terminated to two of those children in separate cases due to a unsuitable home and drug use. Appellant's App. p. 16; Ex. Vol. pp. 165–95. The remaining three children are in their father's custody.

[5]     After Mother pleaded guilty to possession of synthetic marijuana, she agreed to conditional discharge and twenty hours of community service. Mother failed to appear in that case and was arrested on October 31, 2018. She was released from custody on November 5, 2018. Mother also has a prior conviction for Class A misdemeanor possession of a synthetic drug.

[6]     On June 19, 2018, DCS filed a petition alleging that the children were CHINS pursuant to Indiana Code section 31-34-1-1 citing parents' drug use. At the initial CHINS hearing, Mother denied the allegations in DCS's petition. However, at a pre-trial hearing in August 2018, Mother admitted that the children were CHINS. The trial court adjudicated the children as CHINS and made the children wards of DCS retroactive to June 19, 2018. Mother was ordered to submit to random drug screens, participate in an intensive outpatient program, participate in homebased case management, and participate in supervised visitation with the children.

[7]     Mother's interaction with children during visitations was appropriate. But Mother cancelled many visits and did not visit with the children from May through November 2019. Mother failed to visit with the children because "she needed peace." Tr. p. 51. Mother also failed to communicate with her family case manager during the same time period.

[8]     In June 2019, Mother was referred to Crown Counseling for homebased management. She completed an intake appointment with Crown Counseling in November 2019 and also resumed visitation with the children. Mother's

interaction with the children was appropriate during her last three visits. However, the family case manager could not recommend unsupervised visitation because of Mother's lack of stability throughout this case. Tr. pp. 26–27.

[9] Mother did not have stable employment or housing throughout the CHINS and termination proceedings. Tr. p. 26. Mother obtained a home in February 2019, but it was not suitable. It appeared to be abandoned. The home lacked utilities and a front door, windows were missing, and the floor appeared to be "caved in." Tr. p. 35. Two months later, Mother moved in with her boss, her boss's son, and her brother. DCS encouraged Mother to obtain independent housing. Tr. p. 46. DCS has requested copies of Mother's pay stubs, but she did not provide them. Mother did not provide financial support for the children during the proceedings.

[10] Mother did not consistently participate in services or fully address her substance abuse issues. Mother only had one positive drug screen for marijuana during these proceedings, in January 2019.[2] Tr. pp. 37, 42. After the positive screen, Mother had a negative screen in February 2019. Tr. p. 107. Mother completed an outpatient program but did not complete the recommended follow up

---

[2] The family case manager testified that synthetic marijuana is often undetected in drug screens because the chemical composition of the substance changes frequently. Tr. p. 43.

service. Tr. p. 39. Mother did not submit to any further drug screening after February 2019.

[11] On September 9, 2019, DCS filed a petition to terminate Mother's parental rights to the children. A fact-finding hearing was held on December 18, 2019. Father relinquished his parental rights to the children at the hearing.

[12] In its January 3, 2020, order terminating Mother's parental rights, the trial court found:

> Mother lacked stability in her life, so services were implemented to assist with the stability issues. Mother indicated that she did not want the help and did not make herself available for the service provider. Mother indicated that she obtained housing in February of 2019. The case manager conducted a home visit on that home. The home did not have utilities and was not appropriate for any person to reside in. The home appeared to be an abandoned home with broken windows and in deplorable conditions.
>
> Mother submitted to a substance abuse assessment which recommended outpatient services for mother. Mother did participate in a program, but ceased all participation in May of 2019. Mother initially was compliant with the case plan for reunification, but ultimately stopped all participation in May of 2019. Mother has not submitted to a drug screen since January of 2019, which that drug screen was positive for synthetic marijuana. Mother has refused to submit to any further drug screens.
>
> Mother stopped participating in all services in May of 2019 and stopped all communication with [DCS] regarding her children. Mother indicated at that time that she needed a break. Mother

also stopped visiting her children. Mother has not attended a CHINS review hearing for her children since May of 2019.

*** 

Mother has a criminal history all related to her substance abuse issues.

Mother has had her parental rights terminated to previous children in August of 2013.

Mother has three other children to which custody was granted to their father. Mother does not have any of her children in her care or custody.

[DCS] became involved in June of 2018 again due to the parents' substance abuse issues, instability or housing. At the time of this fact finding hearing, mother has not addressed her substance abuse issues, continues with her instability and lack of appropriate housing.

[DCS] has been involved with this mother and offering services since 2009. Clearly, mother has not addressed her substance abuse issues. Mother was reunified with these children and ha[d] her cases dismissed pursuant to the prior CHINS matter in April of 2018. Within two months, the children had [] become wards again due to substance abuse issues.

Grandmother testified to the parent's long history of substance abuse issues. Grandmother testified that the synthetic marijuana makes the parents turn into a manic psychotic state and unsafe for the children. Grandmother indicated mother does not contact her regarding the children. Due to the lack of contact by mother, the children do not have any significant bond with mother.

The children are four and five years of age and have been in relative care for approximately three years of their short lives. The children are bonded in their current placement and thriving.

It would be detrimental to the children's well-being if the children were to be removed from that home.

Neither parent is providing any emotional or financial support for the children. Neither parent has completed any case plan for reunification. Neither parent is in a position to properly parent these children. Father has voluntarily relinquished his parental rights. The children are in relative placement and are bonded and thriving.

The children remain outside of the parents' care. The original allegations of neglect have not been remedied by the parents. Neither of these parents have demonstrated an ability to independently parent the children and provide the necessary care, support and supervision. There is no basis for assuming the parents will complete the necessary services and find one or both of themselves in a position to receive the children into the home. The parents failed to utilize the available services and make the necessary efforts to remedy the conditions, which led to intervention by DCS and the Court.

The children continue to reside in stable relative placement which has indicated both a willingness and ability to adopt both the children. It would be unfair to the children to delay such permanency on the very remote likelihood of the parents committing to and completing services.

*** 

Mother argues that this petition is not ripe and that mother didn't know what her goals were. The services put into place were more than adequate and mother stopping visits in May 2019 speaks clearly that maybe mother has made some progress, but the children's needs certainly did not stop until mother decided to visit with the children again in November 2019. Mother's ongoing patterns of instability cannot be ignored.

Appellant's App. pp. 3–5 (record citations omitted).

[13] The trial court found that DCS had proven both that there is a reasonable probability that the conditions resulting in the removal from Mother's home will not be remedied and that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the children. The court also concluded termination of Mother's parental rights was in their best interests. Mother now appeals the trial court's order terminating her parental rights to B.P. and K.G.

## Standard of Review

[14] Indiana appellate courts have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id.* We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *J.M. v. Marion Cty. Off. of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

[15] Mother does not challenge any of the trial court's factual findings as being clearly erroneous. We therefore accept the trial court's findings as true and determine only whether these unchallenged findings are sufficient to support the judgment. *In re A.M.,* 121 N.E.3d 556, 562 (Ind. Ct. App. 2019), *trans.*

*denied*; *see also* *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012) (holding that when the trial court's unchallenged findings support termination, there is no error), *trans. denied*.

## Discussion and Decision

[16]     Mother claims that the trial court's order involuntarily terminating her parental rights is not supported by clear and convincing evidence. Indiana Code section 31-35-2-4(b)(2) provides that a petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

[17]     DCS must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009). Because Indiana Code subsection 31-35-2-4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong of subsection 4(b)(2)(B) has been

established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010).

[18] Clear and convincing evidence need not establish that the continued custody of the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cty. Off. of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005). It is instead sufficient to show by clear and convincing evidence that the child's emotional and physical development are put at risk by the parent's custody. *Id.* If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[19] The purpose of terminating parental rights is not to punish parents but instead to protect the child. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension, the law allows for their termination when the parties are unable or unwilling to meet their responsibilities as parents. *Id.* Indeed, parental interests must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *G.Y.*, 904 N.E.2d at 1259.

[20] Mother argues that she was substance-free, employed, and resided in a stable home. Therefore, she challenges the trial court's conclusion that there is a reasonable probability that continuation of the parent-child relationship poses a threat to the well-being of her children.

[21] Mother attempts to analogize her circumstances to those in *K.E. v. Indiana Department of Child Services*, 39 N.E.3d 641, 649 (Ind. 2015). In that case, our

supreme court reversed a termination of parental rights where the child was in relative placement and the incarcerated father had voluntarily "made extensive efforts to better himself by learning parenting skills, addressing his problems with substance abuse, and establishing a bond with both of his children." *K.E.*, 39 N.E.3d at 643–44. The court observed that "there is seemingly nothing else that Father could have been doing to demonstrate his dedication to obtaining reunification." *Id.* at 649.

[22] Moreover, in *K.E.*, our supreme court observed:

> A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that [his or] her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. However, termination should not result solely because there is a better home available for the children.

*Id.* (quotations and citations omitted).

[23] Here, the children were removed from Mother's care in June 2018 after she was found unconscious on a park bench with four-year-old B.P. and three-year-old K.G. unsupervised nearby. Mother admitted to using synthetic marijuana. The children had only been returned to Mother's care for approximately two months when they were removed in June 2018. Prior to the removal that led to these proceedings, the children were wards of DCS and placed in relative care from July 2016 through April 2018 due in part to Mother's drug use.

[24] After Mother admitted that the children were CHINS in August 2018, Mother participated in and completed certain services, including a substance abuse

assessment and treatment. However, Mother did not continue to participate in the follow-up substance abuse treatment that DCS recommended.[3] Mother's history of substance abuse is well-documented, particularly her use of synthetic marijuana. Mother generally tested negative for illegal substances during these proceedings, but she also did not submit to drug screens after February 2019. The family case manager testified that it is difficult to detect synthetic marijuana in drug screens because the chemical nature of the substance changes frequently. Tr. p. 43.

[25] Mother claimed stable employment but did not provide requested pay stubs to DCS and did not financially support the children. Mother stated that she lived in the same home for several months. However, Mother did not establish an independent home as DCS recommended. She lived with her boss, her boss's son, and her former foster brother. DCS did not believe this home was suitable for the children.

[26] Before May 2019, Mother participated in supervised visitation with the children, and her interaction with the children was appropriate. But Mother often cancelled the visitations. After May 2019 and until November 2019, Mother stopped communicating with DCS, failed to attend family review meetings, and stopped visitation with the children. In May 2019, Mother told a

---

[3] It was within the trial court's discretion to weigh the conflicting evidence concerning Mother's participation in substance abuse treatment, and the trial court did not credit Mother's testimony that she continued to participate in group therapy after she completed the intensive outpatient substance abuse program.

family case manager that she needed a break and "peace." Tr. p. 51. Visitation resumed when Mother began communicating with her family case manager in November 2019, two months after the petition to terminate her parental rights was filed.

[27] DCS proved that Mother does not have the ability to parent her children and provide them with a stable home. Since July 2016, the children have been in Mother's care for only two months. Mother failed to visit with the children for six months during these proceedings. For all of these reasons, we conclude that the trial court's finding that there is a reasonable probability that continuation of the parent-child relationship poses a threat to the well-being of the children is supported by clear and convincing evidence.[4]

[28] Mother also challenges the trial court's conclusion that termination of the parent-child relationship is in the children's best interests. When we consider the best interests of a child, we look at the totality of the circumstances. *In re A.W.*, 62 N.E.3d 1267, 1275 (Ind. Ct. App. 2016). The trial court "need not wait until a child is irreversibly harmed before terminating the parent-child relationship." *S.E. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 37, 47 (Ind. Ct. App. 2014), *trans. denied*. Although not dispositive, permanency and stability are key considerations in determining the child's best interests. *G.Y.*, 904 N.E.2d at

---

[4] Because Indiana Code section 31-35-2-4(b)(2) is written in the disjunctive, we do not address Mother's argument that clear and convincing evidence does not support the trial court's finding that there is a reasonable probability that the conditions resulting in the removal from Mother's home will not be remedied.

1265. "A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the children." *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012) (citation omitted). Likewise, the testimony of the service providers "in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests." *In re A.D.S.*, 987 N.E.2d 1150, 1158–59 (Ind. Ct. App. 2013), *trans. denied*.

[29] Due to her substance abuse and instability, Mother has not been able to provide a stable and suitable home for her four- and five-year-old children since July 2016. Mother failed to visit with her children for six months during these proceedings because she "needed peace." Tr. p. 51. Mother has not established that she is able to meet the children's immediate or long-term needs. And the family case manager testified that termination of Mother's parental rights was in the children's best interests. Tr. pp. 29–30. The children's paternal grandmother has been caring for the children for nearly three years and desires to adopt them. The children are happy and doing well in their relative placement. For all of these reasons, we conclude that clear and convincing evidence supports the trial court's finding that termination of Mother's parental rights is in the children's best interests.

## Conclusion

[30] The trial court's order terminating Mother's parental rights to B.P. and K.G. is supported by clear and convincing evidence.

Affirmed.

Riley, J., and Tavitas, J., concur.