## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 09 2020, 8:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander W. Robbins
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of A.D. (Minor Child) and

J.H. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

December 9, 2020

Court of Appeals Case No. 20A-JT-1378

Appeal from the Morgan Circuit Court

The Honorable Matthew G. Hanson, Judge

Trial Court Cause No. 55C01-2001-JT-32

**Mathias, Judge.**

[1] J.H. ("Mother") appeals the Morgan Circuit Court's order involuntarily terminating her parental rights to her minor child, A.D. Mother argues that termination of her parental rights is not supported by clear and convincing evidence.

[2] We affirm.

## Facts and Procedural History

[3] A.D. was born on April 24, 2019, and at birth, he tested positive for marijuana, methamphetamine, and amphetamine. Therefore, when A.D. was five days old, the Department of Child Services ("DCS") removed A.D. from Mother's care. A.D. was placed with his paternal grandmother.

[4] A petition alleging that A.D. was a Child in Need of Services ("CHINS") was filed on April 30, 2019.[1] Mother failed to appear for the initial hearing, which was also held on April 30. A.D. was adjudicated a CHINS pursuant to Indiana Code sections 31-34-1-1 and -10.

[5] Mother appeared at the dispositional hearing held on May 23, 2019. The trial court ordered Mother to participate in services including a substance-abuse

---

[1] During these proceedings, A.D.'s biological father had an active warrant for his arrest and was hiding from law enforcement. He did not appear for any hearings in this case and was served by publication because he could not be located. His parental rights to A.D. were terminated by default, and he does not participate in this appeal.

assessment, comply with all treatment recommendations, submit to random drug screens, and maintain stable and adequate housing.

[6] Mother completed a substance-abuse evaluation through Centerstone. She also began working with a family support specialist and a recovery coach. Mother failed to make significant progress, did not attend all required group sessions, and missed meetings with her recovery coach. She was therefore discharged from Centerstone in August 2019.

[7] Next, DCS referred Mother to Life Recovery Center. Mother's participation in treatment through that referral was "hit or miss." Tr. p. 77. Mother was discharged unsuccessfully after she tested positive for methamphetamine and THC. Her treatment providers recommended inpatient treatment. Mother denied using methamphetamine and refused to seek inpatient treatment.

[8] In November and December of 2019, Mother failed to maintain communication with her DCS service providers. And Mother failed to appear at the November 21, 2019 permanency hearing. Because Mother was not in compliance with the case plan, had not made progress in her treatment goals, and was not participating in visitation with the child, on January 27, 2020, DCS filed a petition to terminate Mother's parental rights. Mother did not appear for the February 3, 2020 initial hearing on the termination petition.

[9] In January 2020, a family case manager was able to speak to Mother, and she was re-referred to Centerstone. On April 27, 2020, Mother finally completed a substance abuse evaluation at Centerstone. Mother was "guarded" during her

assessment and minimized her substance-abuse issues. Tr. p. 44. The therapist at Centerstone recommended intensive outpatient therapy and individual therapy.

In May 2020, Mother resumed therapy and began to participate in intensive outpatient therapy three days per week. Mother missed five scheduled group sessions. She met with her therapist regularly until June 4, 2020. Mother admitted that she used methamphetamine in mid-May 2020 and continues to smoke marijuana. She tested positive for THC numerous times throughout these proceedings.

Mother initially participated in supervised visitation with A.D. However, she failed to participate in visitation with the child from November 2019 to May 2020. Mother also has not made any progress towards obtaining stable employment or income and transportation.

On May 28, 2020 and June 12, 2020, the trial court held hearings on DCS's petition to terminate Mother's parental rights. Mother did not appear at the June 12 hearing, but her counsel represented her. Mother failed to respond to counsel's attempts to communicate with her between the two hearing dates. Mother also did not respond to counsel's text message on the morning of the June 12 hearing.

Both the family case manager and the Court Appointed Special Advocate testified that termination of Mother's parental rights was in the child's best interests. Tr. pp. 62–63, 91. DCS maintained A.D.'s placement with paternal

grandmother throughout these proceedings, and grandmother is willing to adopt the child.

[14] On June 23, 2020, the trial court issued an order terminating Mother's parental rights to A.D. The trial court concluded that Mother refuses to acknowledge her substance-abuse issues and has not taken significant steps towards addressing those issues during these proceedings. Appellant's App. p. 28. The court noted that Mother has a "lengthy and continuing drug abuse history" and has two prior "DCS cases where her children have been taken from her by both consent and termination." *Id*. Those prior cases arose due to Mother's drug and stability issues providing "further evidence that [M]other essentially has no understanding of how her drug use has destroyed her life and the lives of her children." *Id*. For these reasons, the trial court concluded that DCS proved both that the conditions that resulted in the child's removal or reasons for continued placement outside Mother's home will not be remedied and that continuation of the parent–child relationship poses a threat to A.D.'s well-being.

[15] Mother now appeals the termination of her parental rights to A.D.

## Standard of Review

[16] Indiana appellate courts have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id*. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id*. In deference to the trial court's

unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *J.M. v. Marion Cnty. Off. of Fam. & Child.*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

[17] Here, the trial court's judgment contains special findings and conclusions; therefore, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Off. of Fam. & Child.*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*. Moreover, we accept unchallenged findings as true and determine only whether the unchallenged findings are sufficient to support the judgment. *In re A.M.*, 121 N.E.3d 556, 562 (Ind. Ct. App. 2019), *trans. denied*; *see also* *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012) (holding that when the trial court's unchallenged findings support termination, there is no error), *trans. denied*.

# Discussion and Decision

[18] Mother claims that the trial court's order involuntarily terminating her parental rights is not supported by clear and convincing evidence. Indiana Code section 31-35-2-4(b)(2) provides that a petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

[19] DCS must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009). Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong of subsection 2(B) has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010).

[20] Clear and convincing evidence need not establish that the continued custody of the parent is wholly inadequate for the child's very survival. *Bester*, 839 N.E.2d

at 148. It is instead sufficient to show by clear and convincing evidence that the child's emotional and physical development are put at risk by the parent's custody. *Id.* If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[21] The purpose of terminating parental rights is not to punish parents but instead to protect children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension, the law allows for their termination when the parties are unable or unwilling to meet their responsibilities as parents. *Id.* Indeed, parental interests must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *G.Y.*, 904 N.E.2d at 1259.

[22] Mother argues that "the root of [her] problems with participating in services was a lack of transportation." Appellant's Br. at 8. She claims that she engaged in services "when transportation was no longer an issue due to services being provided virtually due to the COVID-19 pandemic[.]" *Id.*

[23] Mother may have had difficulty participating in some services due to her lack of transportation. However, Mother's continued drug use, refusal to acknowledge her significant substance-abuse issues, and failure to maintain communication with her DCS service providers had nothing to do with her alleged lack of transportation. Her failure to appear for the fact-finding hearing on June 12, 2020, via a Zoom call or to communicate with her counsel was not caused by her lack of transportation, either.

[24] At birth, A.D. tested positive for marijuana, methamphetamine, and amphetamine. Mother engaged in behavior that endangered A.D.'s life well before he was born. Yet, as the trial court found, Mother "essentially has no understanding of how her drug use has destroyed her life and the lives of her children." Appellant's App. p. 28. Mother continues to deny methamphetamine use, despite the fact that A.D. tested positive for that substance at birth and she tested positive in May 2020. And Mother refused to participate in inpatient treatment as recommended by service providers.

[25] A.D. was removed from Mother at birth and has never been placed in her care. The trial court's finding that the "[p]rior history of this mother with her other children suggests an instability and an inability to ever wish to properly provide any sort of safe or sober homelife for this child" is unchallenged and supported by the evidence. *Id.* at 29. Also, Mother "has shown no intent of ever getting clean in order to do what she needs to do for the best interests of" A.D. *Id*. Mother's failure to appear for the fact-finding hearing in this case further demonstrates her lack of commitment to A.D. and that she is unwilling to take the steps necessary to provide a stable life for the child.

[26] In sum, clear and convincing evidence supports the trial court's findings that DCS proved the factors enumerated in Indiana Code section 31-35-2-4(b)(2). Mother's argument to the contrary is merely a request to reweigh the evidence and credibility of the witnesses, which our court will not do.

# Conclusion

DCS presented clear and convincing evidence that the conditions that resulted in A.D.'s removal or reasons for continued placement outside Mother's home will not be remedied and that continuation of the parent-child relationship poses a threat to A.D.'s well-being. And Mother does not appeal the trial court's finding that termination of her parent rights is in A.D.'s best interests. For all of these reasons, we affirm the trial court's order involuntarily terminating Mother's parental rights.

Affirmed.

Altice, J., and Weissmann, J., concur.